SCOTT D. FLEMING, ESQ.
Nevada Bar No. 5638
**FLEMING LAW FIRM, PLLC**
8250 West Charleston Boulevard
Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 743-6263
E-Mail: scott@fleminglawlv.com
*Attorney for RMSPC Funding, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| In re<br><br>ROBIN LINUS LEHNER and DONYA TINA LEHNER,<br><br>Debtors. | Case No.: 22-14616-NMC<br>Chapter 7 |
| RMSPC FUNDING, LLC<br><br>Plaintiff,<br><br>v.<br><br>ROBIN LINUS LEHNER and DONYA TINA LEHNER,<br><br>Defendants. | Adversary No.:<br><br>**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(A)(2) AND FOR DECLARATORY RELIEF REGARDING 11 U.S.C. § 552** |

Plaintiff RMSPC FUNDING, LLC ("RMSPC" or "Plaintiff"), for its *Complaint to Determine Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2) and for Declaratory Relief Regarding 11 U.S.C. § 552* (its "Complaint"), offers the following allegations:

**PARTIES**

1. RMSPC is a limited liability company organized and existing under the laws of the State of New York.

2. RMSPC is informed and believes that defendants Robin Linus Lehner and Donya Tina Lehner (together, "Debtors" or "Defendants") are residents of Clark County, Nevada.

3. RMSPC is informed and believes that between October 15, 2020 and December 30, 2022, Defendants Robin Linus Lehner and Donya Tina Lehner were married.



FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

4. Defendants' marital community is liable for all debts incurred by either spouse during their marriage, and fraud committed by one spouse may be imputed to the other. RMSPC thus seeks, among other relief, judgment determining that both Defendants are liable for its debt and that such debt is non-dischargeable with respect to both Defendants.

5. RMSPC is informed and believes that Sure Sports, LLC (not a party to this action, and hereinafter designated "Sure Sports") is a Florida limited liability company with its principal place of business at 1926 Hollywood Boulevard, Suite 308, Hollywood, Florida, 33020.

6. As more fully set forth below, Sure Sports acted as an agent, business partner, loan broker and co-conspirator for Defendant Robin Lehner in obtaining a loan from RMSPC. In accordance with the U.S. Supreme Court's recent holding in *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023), Defendants are liable for all misrepresentations made by Sure Sports as part of a fraudulent effort to obtain a loan from RMSPC.

**JURISDICTION AND VENUE**

7. On December 30, 2022 (the "Petition Date"), Debtors commenced a joint voluntary case under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"). Debtors' Chapter 7 case was assigned Case No. 22-14616-NMC (the "Bankruptcy Case").

8. This is an adversary proceeding pursuant to 11 U.S.C. § 523(a)(2) to determine, in part, the non-dischargeability of a debt owed by Debtors to RMSPC.

9. This Court has subject matter jurisdiction over claims related to the non-dischargeability of debt pursuant to 28 U.S.C. § 1334(b) in that such claims arise under Title 11 of the United States Code.

10. Claims concerning the non-dischargeability of a particular debt are deemed "core" proceedings pursuant to 28 U.S.C. § 157(b)(2)(I).

11. This is also an adversary proceeding seeking declaratory relief regarding the effect of 11 U.S.C. § 552 upon RMSPC's interest in the "VGK Contract" (as defined below).

12. This Court has subject matter jurisdiction over claims related to the effect of 11 U.S.C. § 552 pursuant to 28 U.S.C. § 1334(b) in that such claims arise under Title 11 of the United States Code.

13. This Court has subject matter jurisdiction over claims related to the effect of 11 U.S.C. § 552 pursuant the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that any Court of the United States "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

14. Claims related to the effect of 11 U.S.C. § 552 on the "VGK Contract" are deemed "core" proceedings pursuant to 28 U.S.C. § 157(b)(2)(K) in that they concern the validity, extent and/or priority of a lien.

15. This matter was properly referred to this Court pursuant to 28 U.S.C. § 157(a) as a matter arising under the Bankruptcy Code.

16. Pursuant to Fed. R. Bankr. P. 7008 and LR 7008, RMSPC states that it consents to the entry of final orders and judgments by the Bankruptcy Court.

17. This judicial district is the proper venue for this adversary proceeding pursuant to 28 U.S.C. § 1409(a), as this adversary proceeding arises in and is related to the Bankruptcy Case, which is currently pending in the District of Nevada.

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

## GENERAL ALLEGATIONS

### EMPLOYMENT OF DEFENDANT ROBIN LEHNER AS A PROFESSIONAL HOCKEY PLAYER

18. Defendant Robin Lehner is, and at all relevant times was, a professional ice hockey player.

19. On or about October 2, 2020, Defendant Robin Lehner and Black Knight Sports and Entertainment, LLC d/b/a Vegas Golden Knights (the "Vegas Golden Knights") entered into a certain *National Hockey League Standard Player's Contract* (the "VGK Contract").

20. Under the VGK Contract, the Vegas Golden Knights agreed to employ Defendant Robin Lehner for a period of five (5) years.

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

21. Pursuant to the VGK Contract, Defendant Robin Lehner was entitled to a signing bonus of two million dollars ($2,000,000) payable in two installments of one million dollars ($1,000,000) each on November 1, 2020 and February 1, 2021. In addition, Defendant Robin Lehner was entitled to receive the following compensation for each National Hockey League (NHL) season:

| Season | Amount |
|---|---|
| 2020-2021 | $1,000,000 |
| 2021-2022 | $5,000,000 |
| 2022-2023 | $6,500,000 |
| 2023-2024 | $6,000,000 |
| 2024-2025 | $4,500,000 |

22. The VGK Contract provides that Defendant Robin Lehner is required to provide certain services, which can be summarized as "being a professional hockey player," and include the following:

> 2. The Player agrees to give his services and to play hockey in all NHL Games, All Star Games, International Hockey Games and Exhibition Games to the best of his ability under the direction and control of the Club in accordance with the provisions hereof.
>
> The Player further agrees,
>
> (a) to report to his Club's Training Camp at the time and place fixed by the Club, in good physical condition,
> (b) to keep himself in good physical condition at all times during the season,
> (c) to give his best services to the Club and to play hockey only for the Club unless his SPC is Assigned, Loaned or terminated by the Club,
> (d) to co-operate with the Club and participate in any and all reasonable promotional activities of the Club which will in the opinion of the Club promote the welfare of the Club and to cooperate in the promotion of the League and professional hockey generally,
> (e) to conduct himself on and off the rink according to the highest standards of honesty, morality, fair play and sportsmanship, and to refrain from conduct detrimental to the best interest of the Club, the League or professional hockey generally.

23. The VGK Contract further provides that in the event Defendant Robin Lehner is injured in the course of his employment and unable to play, he is entitled to continue receiving compensation:

> 5. (d) It is also agreed that if the Player, in the sole judgment of the Club's physician, is disabled and unable to perform his duties as a hockey Player by reason of an injury sustained during the course of his employment as a hockey Player, including travel with his team or on business requested by the Club, he shall be entitled to receive his remaining Paragraph 1 Salary and Signing Bonuses due in accordance with the terms of this SPC for the remaining stated term of this SPC as long as the said disability and inability to perform continue but in no event beyond the expiration date of the fixed term of this SPC. . .

24. The VGK Contract provides that the Vegas Golden Knights may exercise an option to terminate the VGK Contract by paying Defendant Robin Lehner two-thirds of the compensation otherwise due for the remaining term of the agreement:

> (d) If the Club elects to terminate this SPC pursuant to this Paragraph 13, it shall be obligated to pay to the Player, in equal semi-monthly installments, to be paid in accordance with the payroll payment schedule applicable to the Club's Active Roster, over twice the remaining term of the SPC (the "Buy-Out Period"):
>
> . . .
>
> (ii) if the Player is 26 years of age or older at the time the termination is effective, an amount equal to 2/3 of the total fixed amount of the Player's Paragraph 1 NHL Salary, for the unexpired fixed-term of this SPC, reduced by any advance payment of Paragraph 1 Salary received by the Player prior to the date the termination is effective.

25. Otherwise, the VGK Contract provides that the Vegas Golden Knights may terminate Defendant Robin Lehner, and discontinue payment of compensation, only upon receipt of "Waviers" from all other NHL hockey clubs following the failure of Defendant Robin Lehner to comply with Vegas Golden Knight rules or provide services:

. . .

. . .

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

> 14. The Club may also terminate this SPC upon written notice to the Player (but only after obtaining Waivers from all other Clubs) if the Player shall at any time:
>
> (a) fail, refuse, or neglect to obey the Club's rules governing training and conduct of Players, if such failure, refusal or neglect should constitute a material breach of this SPC.
>
> (b) fail, refuse or neglect to render his services hereunder or in any other manner materially breach this SPC. In the event of termination under Paragraph 14(a) or (b) the Player shall only be entitled to compensation due to him to the earlier of the date such notice is personally delivered to him or the date such notice is e-mailed to him.

**DEFENDANT ROBIN LEHNER'S ENGAGEMENT OF LOAN BROKER SURE SPORTS, LLC**

26. Sure Sports holds itself out as a specialist in obtaining loans for professional athletes. Sure Sport's website currently offers the following summary of its services:

> General Financing And Loans For Athletes Based On Current Or Future Contract Earnings
>
> Sure Sports offers general financing and contract advances to professional athletes, based on their current or future earnings, with a signed player contract in the NFL, MLB, NBA, WNBA, NHL, or MLS as well as golf and auto racing contracts.

https://suresports.com/professional-athlete-loans

27. Sure Sports currently advertises to professional athletes that it can procure loans for them with the following general terms:

> Benefits Of A Contract Loan / Line Of Credit
>
> Financing up to 30% of a guaranteed contract or 10% of a non-guaranteed contract
> Competitive interest rates
> Funding within as little as 2 business days upon approval
> No off-season payments required
> Customized repayment terms
> No collateral required
> No prepayment penalty
> Multi-purpose use - fund business ventures, passion projects, investments, finance home or car purchase, training, satisfy existing debt, etc.

https://suresports.com/professional-athlete-loans

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

28. RMSPC is informed and believes that the representations currently made on Sure Sports' website are substantially similar to those advertised between October 2020 and May 2021.

29. According to its current website, "Sure Sports is a proud Corporate Member of the Independent Community Bankers of America®." https://suresports.com/about Sure Sport is not, however, listed among the 21,020 community banks that make up the Independent Community Bankers of America®. *See* https://directory.icba.org/

**SURE SPORTS' FUNDING REQUEST
ON BEHALF OF DEFENDANT ROBIN LEHNER**

30. At some time prior to October 2020, Defendant Robin Lehner engaged Sure Sports as a broker for the purpose of obtaining a loan from one or more third parties.

31. On or about May 12, 2021, Sure Sports, on behalf of Defendant Robin Lehner, presented RMSPC's predecessor with a document entitled "Robin Lehner Opportunity Analysis," requesting funding for a $6.5 million loan, a true and correct copy of which is attached as **Exhibit 1**.

32. The "Robin Lehner Opportunity Analysis" offered the following summary of the loan requested by Defendant Robin Lehner:

> **<u>Introduction / Purpose of Requested Facility</u>**:
>
> The Borrower is requesting $6.5M as an advance against a 5-year $25M NHL Contract with the Vegas Golden Knights with +$22.3M remaining. The primary use of the funds will be to restructure and consolidate existing debt. The use of funds on the existing debt was the down payment for a property located at 9501 Balatta Canyon CT, Las Vegas, NV 89144 ("Subject Property") and for investment capital into the Borrower's off-ice business ventures.

[Emphasis in original.]

33. The "Robin Lehner Opportunity Analysis" indicated that the loan being sought would be used to retire all existing "contract-based debt" apart from a $1.75 million private note secured by Debtors' home, which would be "rolled" into a mortgage within 90 days:

. . .

. . .

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

> **Discussion of Other Current Liabilities**:
>
> This facility will wrap up all of the Borrower's existing contract-based debt. The only additional outstanding debt will be a $1.75M private note with a first position lien on the subject property. The balance of this note is 65% LTV of the purchase price and should be rolled into a mortgage within the next 60-90 days.

[Emphasis in original.]

34. In further support of Sure Sports loan request on behalf of Defendant Robin Lehner, Sure Sports provided RMSPC's predecessor with a *Personal Financial Statement* dated October 15, 2020 (the "October 2020 PFS"), a true and correct redacted copy of which is attached as **Exhibit 2**.

35. The October 2020 PFS consists of three (3) pages. The first two pages were initialed by Defendant Robin Lehner and the third page was signed by him on or about October 16, 2020.

36. The October 2020 PFS includes certain express representations and warranties, and imposes upon Defendant Robin Lehner a continuing duty to advise any prospective lender of any material changes in his financial condition:

> Representations and Warranties
>
> The Information contained in this statement is provided to induce you to extend or to continue the extension or credit to the undersigned or to others upon the guarantee of the undersigned. The undersigned acknowledge and understand that you are relying on the information provided herein in deciding to grant or continue credit or to accept a guarantee thereof. Each of the undersigned represents, warrants and certifies that the information provided herein is true, correct and complete. Each of the undersigned agrees to notify you immediately and in writing of any change in name, address, or employment and of any material adverse change (l) in any of the information contained in this statement or (2) in the financial condition of any of the undersigned or (3) in the ability of any of the undersigned to perform its (or their) obligations to you. In the absence of such notice or a new and full written statement, this should be considered as a continuing statement and substantially correct. If the undersigned falls to notify you as required above, or if any of the information herein should prove to be inaccurate or incomplete in any material respect, you may declare the indebtedness of the undersigned or the indebtedness guaranteed by the undersigned, as the case may be immediately due and payable. . .

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

37. RMSPC is informed and believes that Defendant Robin Lehner authorized and directed Sure Sports to provide the October 2020 PFS to RMSPC's predecessor as part of his request for a loan.

**THE RMSPC LOAN**

38. Based on the information provided by Sure Sports on behalf of Defendant Robin Lehner, including but not limited to the information contained in the October 2020 PFS and "Robin Lehner Opportunity Analysis," RMSPC agreed to provide a $6.5 million loan to Defendant Robin Lehner.

39. On May 19, 2021, Defendant Robin Lehner executed and delivered to RMSPC a certain *Promissory Note* (the "RMSPC Note"), a true and correct copy of which is attached as **Exhibit 3**.

40. The RMSPC Note evidences a loan (the "RMSPC Loan") in the original principal sum of $6.5 million.

41. The terms of the RMSPC Loan are further memorialized in a certain *Loan and Security Agreement,* a true and correct copy of which is attached as **Exhibit 4**.

42. The *Loan and Security Agreement* included affirmative covenants that required Defendant Robin Lehner to provide prompt written notice of the occurrence of certain subsequent events, including changes in his physical or mental condition, changes in his financial condition, the commencement of litigation, or any event of default under any of the loan documents:

> 5.1.2 Within a reasonable time (and in no event later than seven (7) days following the occurrence of any event described herein) advise Lender in writing of: (i) any injury, illness or other medical condition that has materially adversely affected, or could reasonably be expected to materially adversely affect, Borrower's ability to continue to perform Borrower's obligations under the Player Contract at a level consistent with Borrower's past performance; (ii) any other condition, event, or act that has materially adversely affected, or could reasonably be expected to materially adversely affect, Borrower's mental or physical health, assets, liabilities, financial condition, reputation or ability to perform and comply with the Loan Documents, or Lender's rights under the Loan Documents; (iii) any failure or alleged failure of Borrower to comply with the Player Contract or any claim made by Borrower's Team or by the

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

> professional league for which Borrower plays, or any of their respective representatives, that Borrower's compensation or the payment of any Borrower Cash under the Player Contract will or may be suspended, terminated, set off or reduced, be subject to any fine, or that Borrower is or may be obligated to repay any such compensation or pay any other fine or penalty; (iv) any material change in Borrower's obligations thereunder; (v) any actual or pending loan, hiring or trade of Borrower to another team (which successor team shall, for the avoidance of doubt, constitute Borrower's Team), or buyout or assignment or re-assignment of the Player Contract, or other material change in the terms, location, or requirements of Borrower's employment by Borrower's Team; (vi) any amendment or proposed amendment to the Player Contract; (vii) any litigation or claim that is filed by or against Borrower by any person or entity; and (viii) the occurrence of any event that would constitute an Event of Default under this Agreement or any of the other Loan Documents.

43. The *Loan and Security Agreement* included negative covenants that expressly prohibited Defendant Robin Lehner from engaging in certain conduct without the prior written consent of RMSPC, including the assumption of any debt in excess of $25,000 or the granting of any personal guarantee:

> 5.2.1 Other than the Debt and mortgages secured solely by real property owned by Borrower, automobile loans secured by vehicles owned by Borrower, and lines of credit and credit card debt in an aggregate amount not to exceed $25,000.00 at any one time outstanding (in the aggregate), Borrower shall not incur any additional debt or liabilities, fixed or contingent; guarantee, become a surety, co-sign, or otherwise directly or indirectly assume or otherwise accept responsibility (in whole or in part) for the financial obligations, indebtedness, or liabilities of any third party; agree to indemnify, defend, or hold harmless any third party; or engage in any wrongful conduct that could give rise to any material liability under any Contract or Applicable Law. For the avoidance of doubt, without Lender's prior written consent, Borrower acknowledges and agrees that so long as the Debt remains outstanding, Borrower shall not solicit or accept funding from, or obtain any other loan or enter into any similar financing transaction with any other person or entity which will be (or is intended to be) secured by all or any portion of the Collateral, and any such financing so obtained by Borrower in contravention of this paragraph, in any event, shall be subordinate in all respects to the payment and performance of the Obligations.

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

44. The *Loan and Security Agreement* included a provision in which Defendant Robin Lehner confirmed that RMSPC was relying on his representations and warranties in extending the RMSPC Loan:

> 6.2 MATERIAL INDUCEMENT. Each representation, warranty, covenant, and agreement by Borrower set forth in this Agreement and in the other Loan Documents is fundamental and material to Lender's agreement to enter into the Loan Documents and make the Loan, and has been specifically negotiated and relied upon by Lender as a material inducement to make the Loan and consummate the transactions contemplated by this Agreement and the other Loan Documents. All such representations, warranties, covenants, and agreements of Borrower made hereunder and in the other Loan Documents shall be strictly construed such that anything less than full, complete and strict truthfulness, accuracy, completeness, and compliance therewith shall be considered a material breach, notwithstanding any lack of knowledge, control or culpability on the part of Borrower, and without regard to any mitigating factors, including, without limitation, any event of force majeure or otherwise. Under no circumstances shall Borrower be excused from its Obligations. Under no circumstances shall Borrower be entitled to receive any notice of, or opportunity to cure, any breach by Borrower of this Agreement and the other Loan Documents except as otherwise expressly provided herein or therein, or by Lender in Lender's sole discretion in writing, it being expressly understood that the occurrence of such breach shall constitute an immediate Event of Default under this Agreement.

45. Pursuant to the *Loan and Security Agreement*, Defendant Robin Lehner granted RMSPC a security interest in substantially all of his assets, including the VGK Contract (collectively, the "Collateral").

46. RMSPC perfected the security interest granted by the *Loan and Security Agreement* on May 24, 2021 by recording with the Nevada Secretary of State as Document 2021171669-6 a certain *UCC Financing Statement* (the "Nevada UCC-1"), a true and correct copy of which is attached as **Exhibit 5**.

47. The RMSPC Loan was funded on or about May 18, 2021, and pursuant to the written direction of Defendant Robin Lehner, proceeds were disbursed as follows:

. . .

. . .

. . .

| Recipient | Amount | Purpose |
|---|---|---|
| Sure Sports Lending | $ 130,000.00 | Underwriting Fee |
| Sure Sports Lending | $ 32,750.00 | Previously Deferred Underwriting Fee |
| South River Capital, LLC | $4,234,416.67 | Payoff of Existing Note |
| ASLA Capital | $1,680,250.00 | Paydown of Existing Note |
| Exceptional Risk Advisors, LLC | $ 147,583.33 | Insurance Premium |
| Sure Sports Lending | $ 15,000.00 | Legal/Closing Costs |

48. On February 22, 2022, RMSPC paid a premium of $140,182.00 on behalf of Defendant Robin Lehner to renew a "Death, Dishonor and Disgrace" insurance policy required pursuant to Section 5.1.5(a) of the *Loan and Security Agreement*.

**THE MARCH 2022 PFS**

49. Defendant Robin Lehner failed to pay the Note when it matured on November 15, 2021.

50. Acting through Sure Sports, Defendant Robin Lehner requested, and RMSPC later agreed, to extend the maturity date of the Note.

51. As part of the discussions that took place between RMSPC and Sure Sports, Sure Sports presented RMSPC with an updated *Personal Financial Statement* dated March 24, 2022 (the "March 2022 PFS), a true and correct copy of which is attached as **Exhibit 6**.

52. Although the March 2022 PFS is unsigned, Sure Sports represented to RMSPC that it was an accurate summary of Defendant Robin Lehner's then-current financial condition.

**THE FIRST AMENDMENT TO THE RMSPC NOTE**

53. Other than the March 2022 PFS, neither Defendant Robin Lehner nor Sure Sports disclosed any material changes in Defendant Robin Lehner's financial condition when requesting the modification of the Loan.

54. On or about September 19, 2022, Kyle Ricker, acting pursuant to a power of attorney granted by Defendant Robin Lehner, executed and delivered to RMSPC a certain

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

*Amendment to Loan Documents* (the "First Amendment"), a true and correct copy of which is attached as **Exhibit 7.**

55. Among other things, the First Amendment extended the maturity date of the Note to October 15, 2022.

56. In the First Amendment, Defendant Robin Lehner (acting through Mr. Ricker) offered the following representation and warranty:

> The execution and delivery of this Amendment by Borrower, and the performance and observance of the terms and conditions contained herein, do not violate or conflict with any agreement to which Borrower is a party, any law applicable to Borrower, or constitute a breach, threatened breach, or default of any other agreement, instrument, or document binding or enforceable against Borrower. . .

57. RMSPC is informed and believes that at the time Defendant Robin Lehner offered this representation and warranty (through Mr. Ricker), obligations to multiple other creditors were in default, multiple lawsuits were pending, and this extension of the maturity date of the RMSPC Note did, in fact, constitute a breach of one or more agreements involving other creditors, which Defendant Robin Lehner had a duty to disclose to RMSPC.

58. The First Amendment includes as a supporting document a certain *Pledge Agreement* dated September 19, 2022 in which Defendant Robin Lehner (acting through Kyle Ricker pursuant to a power of attorney) pledged to RMSPC as security all rights to receive future payments from Solar Code Holdings, LLC. In that document, Defendant Robin Lehner stated: "Borrower represents and warrants to Lender that Borrower is to receive Fifteen Million Dollars (USD $15,000,000.00) from SolarCode, LLC."

59. Neither Defendant Robin Lehner nor Sure Sports disclosed any material changes in Defendant Robin Lehner's financial condition when requesting the first modification of the RMSPC Loan.

**RECEIPT OF A PARTIAL PAYMENT**

60. On or about November 25, 2022, Defendant Robin Lehner made a payment on the RMSPC Note of $3,794,457.32.

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

61. RMSPC is informed and believes that Defendant Robin Lehner obtained the funds used to reduce the balance of the RMSPC Note from a loan from Aliya Growth Fund, LLC – Series X ("Aliya").

62. RMSPC is informed and believes that Sure Sports acted as an agent, business partner, loan broker and co-conspirator for Defendant Robin Lehner in obtaining the loan from Aliya.

**THE SECOND AMENDMENT TO THE RMSPC NOTE**

63. Defendant Robin Lehner failed to pay the Note, as amended, when it matured on October 15, 2022.

64. Acting again through his agent, business partner, loan broker and co-conspirator Sure Sports, Defendant Robin Lehner requested, and RMSPC agreed, to extend the maturity date of the RMSPC Note.

65. On or about November 16, 2022, Kyle Ricker, acting pursuant to a power of attorney granted by Defendant Robin Lehner, executed and delivered to RMSPC a certain *Second Amendment to Loan Documents* (the "Second Amendment"), a true and correct copy of which is attached as **Exhibit 8.**

66. Among other things, the Second Amendment extended the maturity date of the Note to April 1, 2023.

67. In the Second Amendment, Defendant Robin Lehner (acting through Mr. Ricker) offered the same representation and warranty that appeared in the First Amendment:

> The execution and delivery of this Amendment by Borrower, and the performance and observance of the terms and conditions contained herein, do not violate or conflict with any agreement to which Borrower is a party, any law applicable to Borrower, or constitute a breach, threatened breach, or default of any other agreement, instrument, or document binding or enforceable against Borrower. . .

68. RMSPC is informed and believes that at the time Defendant Robin Lehner offered this representation and warranty (through Mr. Ricker), obligations to multiple other creditors were in default, multiple lawsuits were pending, and this extension of the maturity date of the RMSPC Note did, in fact, constitute a breach of one or more agreements involving other creditors, which Defendant Robin Lehner had a duty to disclose to RMSPC.

69. Neither Defendant Robin Lehner nor Sure Sports disclosed any material changes in Defendant Robin Lehner's financial condition when requesting the second modification of the RMSPC Loan.

70. As noted above, on December 30, 2022, Defendants commenced their Bankruptcy Case.

**MATERIAL MISREPRESENTATIONS BY DEFENDANT ROBIN LEHNER IN THE OCTOBER 2020 PFS**

71. Since the filing of the Bankruptcy Case, RMSPC has learned that Defendant Robin Lehner made multiple material affirmative misrepresentations when requesting the Loan.

72. The October 2020 PFS includes a section entitled "Cash Income & Expenditures for Current Year" above the date "2020" and includes several material misrepresentations. The October 2020 PFS lists Defendant Robin Lehner's "Base Salary (NHL Contract)" as $5,000,000. That statement is fraudulent in at least two respects:

a. As noted above, the VGK Contract provides that Defendant Robin Lehner was entitled to compensation for the 2020-2021 season of $1,000,000. Defendant Robin Lehner was not scheduled to receive $5,000,000 in annual compensation until the 2021-2021 season.

b. Defendants joint 2020 U.S. Tax Return provides that Defendants' adjusted gross income for that year was $810,760.00.

73. The October 2020 PFS includes a section entitled "Assets" which includes material misrepresentations. Under the category of "Accounts and Notes Receivable" the October 2020 PFS lists as an asset or assets totaling $25,000,000. RMSPC is informed and believes that this amount refers to a purported obligation of Solar Code, LLC ("Solar Code") that is fraudulent in at least three (3) respects:

a. RMSPC is informed and believes that any funds actually transferred by Defendant Robin Lehner to Solar Code must be characterized as a capital contribution, rather than a loan.

b. RMSPC is informed and believes that Defendant Robin Lehner has not contributed $25 million, or anything approaching that sum, to Solar Code.

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

c. RMSPC is informed and believes that Defendant Robin Lehner offered personal guarantees of Solar Code obligations. Rather than constituting an asset, however, any personal guarantees should have been disclosed as contingent liabilities.

74. Under the category of "Partnerships/PC Interests/S Corporations (Schedule E)" the October 2020 PFS lists assets of Defendant Robin Lehner totaling $56,000,000. Schedule E of the October 2020 PFS indicates that Defendant Robin Lehner is the sole owner of three companies, with the following then-current market values:

| | |
|---|---|
| Solarcode, LLC | $50,000,000 |
| RL Exotics | $ 5,000,000 |
| Lehner Enterprises (Brand) | $ 1,000,000 |

75. Defendant Robin Lehner's $50 million valuation of Solar Code was fraudulent in at least five (5) respects:

a. Solar Code purports to be a design-builder of solar and steam-based powerplants. RMSPC is informed and believes that Solar Code has never broken ground on a project.

b. RMSPC is informed and believes that as of October 2020, and continuing to this day, Solar Code is not conducting business and has no sources of income.

c. In their 2020 U.S. Tax Return, Defendants claim to have incurred a loss related to Solar Code of $422,875.

d. RMSPC is informed and believes that as of October 2020, and continuing to this day, Solar Code has no significant tangible assets.

e. RMSPC is informed and believes that as of October 2020, and continuing to this day, Solar Code has no significant intellectual property.

76. RMSPC is informed and believes that shares of Solar Code have never been publicly traded. As a privately-held company with no ongoing business, no pending business, no income (or, in fact, significant ongoing net losses), no assets, and no intellectual property, Solar Code has a fair market value of $0.

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

77. RMSPC is informed and believes that in an effort to "paper the file" after the fact to support a fraudulent $50 million valuation for Solar Code, Defendant Robin Lehner and/or Sure Sports obtained a one-page letter from Croft, LLC, a true and correct copy of which is attached as **Exhibit 9** (the "Croft Letter").

78. The Croft Letter provides, in pertinent part, the following:

> October 20, 2020
>
> To Whom lt May Concern,
>
> After careful review of all my meetings and how-s of discussion over the phone and in person with Robin L. Lehner and his team, I am prepared to give a conservative valuation of Solarcode at $50,000,000.
>
> The basis for my conservative valuation is based on the following 5 bullet points:
>
> 1.) Equity investment - Equity purchase of $20,000,000 for a 10% stake in Solarcode. This alone values Solarcode at $200,000,000.
>
> 2.) Solarcode has a $5,000,000 joint venture licensing agreement which has already been signed.
>
> 3.) CROFT has done their due diligence of Autumnwood Financial Corporation and according to David Herrera, CFO of Solarcode, their pipeline is $82,000,000 in future revenues. According to Mr. Herrera, they will be receiving project financing within tbe next 60 days.
>
> 4.) In order to receive financing, Mr. Herrera had hired our bookkeeping vertical at CROFT to follow Generally Accepted Accounting Principles (GAAP) and has paid our invoices in full in order to support the $82,000,000 financing deal.
>
> 5.) When determining my valuation, I also looked at who would be giving their stamp of approval. Black & Veatch (a professional engineering company), #1 in telecom, #2 in power and #5 in water measured by gross revenues in 2016, will be providing their stamp of approval on Solarcode's solar technology by Friday, October 23rd, 2020.
>
> In closing, my professional conservative valuation of Solarcode as of October 19th, 2020 is $50,000,000.
>
> . . .

79. RMSPC is informed and believes that the Croft Letter is fraudulent in at least six (6) respects:

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

a. The individuals who purportedly signed the Croft Letter, Paul Thomas Croft and Jonathan D. Frost, are accountants, not business valuation specialists or licensed appraisers.

b. Prior "equity investment" is not a generally recognized basis for valuing a business.

c. Execution of a purported joint venture licensing agreement is not a generally recognized basis for valuing a business.

d. A promise of future financing is not a generally recognized basis for valuing a business.

e. Payment of invoices for a "bookkeeping vertical" by a third party is not a generally recognized basis for valuing a business.

f. An expected future "stamp of approval" on purported technology is not a generally recognized basis for valuing a business.

80. RMSPC is informed and believes that the Croft Letter was procured by Defendant Robin Lehner and/or Sure Sports for the sole purpose of supporting a fraudulent estimate of the value of an asset and not as a result of any actual, independent professional analysis. RMSPC is further informed and believes that Defendant Robin Lehner and Sure Sports were at all times aware that the Croft Letter was fraudulent.

81. RMSPC is informed and believes that RL Exotics operates a reptile breeding facility in Plato, Missouri. Defendant Robin Lehner's $5 million valuation of RL Exotics was fraudulent in at least five (5) respects:

a. The October 2020 PFS indicates that Defendant Robin Lehner purchased the real estate where RL Exotics operates in 2019 for $725,000, claiming that the then-current market value of the real estate was $919,500. The document further discloses a mortgage in favor of Bank of the Ozarks with a principal balance of $550,000, resulting in equity of not more than $369,500.

b. On May 4, 2023, JHB Collective, LLC commenced an adversary proceeding alleging that on September 17, 2019, Defendant Robin Lehner agreed to

purchase "snake-breeding inventory" for $850,000, but then defaulted on payments. RMSPC is informed and believes that fair market value of the "snake-breeding inventory" was not more than $850,000, resulting in $0 in equity.

c. At the first meeting of creditors in the Bankruptcy Case, Defendant Robin Lehner indicated that RL Exotics was struggling to cover expenses and was not generating any net revenue.

d. The October 2020 PFS lists as an asset with a value of $120,000 a "2020 Rent Receivable – 40255 Dawn Rd., Plato, MO 65552." RMSPC is informed and believes that this receivable was due from RL Exotics, which had been unable to generate sufficient earnings to cover "rent" purportedly due to Defendant Robin Lehner for use of the facility it occupied.

e. In their 2020 U.S. Tax Return, Defendants claimed a business loss related to RL Exotics of $382,940.

82. Based on the purchase price of the real estate and inventory assets, RL Exotics had an asset value of less than $400,000, rather than $5 million as reflected in the October 2020 PFS. If valued using an earnings multiplier, RL Exotics would have a value at or near $0.

83. RMSPC is informed and believe that Defendant Robin Lehner was at all relevant times fully aware that RL Exotics had an actual fair market value of less than $5 million.

84. The October 2020 PFS lists as an asset "Lehner Enterprises (Brand)" with a value of $1 million.

85. RMSPC is informed and believes that "Lehner Enterprises" is a limited liability company organized under the laws of the State of New York.

86. On April 23, 2023, Defendants filed in the Bankruptcy Case an amended *Official Form 106A/B Schedule A/B: Property* [ECF No. 133] stating the following concerning Lehner Enterprises:

. . .

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

> Lehner Enterprises, LLC: (I) per Agreement dated October 22, 2020, Lehner Enterprises, LLC transferred to Michael Lehner 100% of RL Solar, LLC, which in turn, owns certain intellectual property, and 100% of SolarCode Holdings, LLC, which in turn, owes 100% of the membership interersts in SolarCode, LLC, SolarCode Manufacturing, LLC, and SolarCode Management, LLC, and 85% of Sunshine Alley, LLC, but subject to a promissory note in the amount of $15.3 million and 50-50 profit share; (II) owns business bank account at Bank of America, Account No. *7984; (III) owns an abandoned trademark for "SolarCode" USPTO Serial No. 88914010 (SolarCode, LLC has a current live trademark for the same as Serial No. 97138055).

87. Based on this document, RMSPC is informed and believes that apart from whatever cash was held in the Bank of America account ending in 7984, the only assets held by Lehner Enterprises when the October 2020 PFS was prepared consisted of an indirect ownership stake in Solar Code and an abandoned trademark, both of which were entirely without value.

88. RMSPC is informed and believes that at all relevant times, Lehner Enterprises was a holding company that did not conduct any business or generate any income and that there was no basis whatever to assign a value of $1 million to that asset. RMSPC is informed and believes that Defendant Robin Lehner and his agent, business partner, loan broker and co-conspirator Sure Sports knowingly and fraudulently attributed a $1 million value to a worthless asset to induce RMSPC to extend the Loan.

89. The October 2020 PFS lists as an asset "2020 Tax Refund (Receivable)" of $2,000,000.

90. In another effort to "paper the file" to support Defendant Robin Lehner's fraudulent asset valuations in the October 2020 PFS, Sure Sports and/or Defendant Robin Lehner obtained from J.D. Frost & Company, PLLC a one-page letter (the "Frost Letter"), a true and correct copy of which is attached as **Exhibit 10**.

91. The Frost Letter states, in its entirety, the following:

. . .

. . .

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

Jonathan D. Frost, CPA
J.D. Frost & Company, PLLC
1413 Chestnut St, Suite 401
Chattanooga, TN 37402

September 29, 2020

To whom it may concern:

Based on the information provided by the client, we anticipate an estimated refund for the year ending December 31, 2020 in the amount of $1,500,000 - $1,800,000. This is based on information as of the date of this letter.

If you need any additional information, please let me know.

Sincerely,
Jonathan D. Frost

92. RMSPC is informed and believes that the Frost Letter was signed by one of same signatories to the Croft Letter, namely the accountant Jonathan D. Frost.

93. RMSPC is informed and believes that Defendant Robin Lehner had no other sources of income in 2020 apart from the VGK Contract and his signing bonus.

94. The Frost Letter was fraudulent in at least three (3) respects:

a. As noted above, the VGK Contract only provided for compensation of $1,000,000 for the 2020-2021 season, which could not give rise to a tax refund of $1.5 million.

b. Defendants joint 2020 U.S. Tax Return provides that Defendants' adjusted gross income for that year was $810,760.00, which could not have resulted in a refund of $1.5 million or more.

c. The records made available to RMSPC by Sure Sports include a letter dated April 27, 2022, from S.E. Turner & Associates, Ltd. advising Defendants that they should expect a refund of $214,116 for tax year 2020.

95. RMSPC is informed and believes that the Frost Letter was issued for the sole purpose of supporting a fraudulent estimate of the value of an asset and not as a result of any actual, independent professional analysis. RMSPC is further informed and believe that Defendant Robin Lehner and Sure Sports were at all times aware that the Frost Letter was fraudulent.

96. As noted above, the October 2020 PFS lists as an asset a $120,000 receivable for rent for real property located in Plato, Missouri. That representation was fraudulent in that Defendant Robin Lehner failed to disclose (i) that that receivable was not the result of an arm's length third-party transaction but was instead due from a company that he controls, and (ii) that the receivable was uncollectable based on the financial performance of RL Exotics.

**MATERIAL OMISSIONS PRIOR TO FUNDING THE RMSPC LOAN**

97. As noted above, the October 2020 PFS included an express representation and warranty that required Defendant Robin Lehner to provide prospective lenders with information regarding any material changes in his financial condition. Sure Sports, Defendant Robin Lehner's agent, business partner, loan broker and co-conspirator, was certainly aware of this ongoing requirement, which appeared in a document that Sure Sports prepared and which bore its letterhead. Nevertheless, Defendant Robin Lehner and Sure Sports failed to disclose obligations totaling more than $6 million that existed prior to the funding of the RMSPC Loan.

98. The October 2020 PFS required Defendant Robin Lehner to disclose, among other things, all promissory notes, accounts payable, personal guarantees, contingent liabilities, law suits and legal actions and all other liabilities.

99. Defendant Robin Lehner failed to provide information to RMSPC regarding an $850,000 debt to JHB Collective, LLC for the sale of the "snake-breeding inventory" located in Plato, Missouri that occurred on September 17, 2019. Defendant Robin Lehner failed to disclose his failure to pay a $150,000 deposit due October 1, 2019. Defendant Robin Lehner failed to disclose that on November 15, 2019, he executed a promissory note in favor or JHB Collective, LLC in the principal sum of $887,500 or that a civil action was later commenced against him on September 14, 2022 in the Fifteenth Judicial District for the County of Palm Beach, Florida to recover amounts due under that note. The obligation due to JHB Collective, LLC is described in greater detail in Amended Proof of Claim No. 4 in the Bankruptcy Case.

100. Defendant Robin Lehner failed to provide information to RMSPC regarding $139,115.28 in unpaid legal fees due to the law firm of Bryan Cave Leighton Paisner, LLP for invoices presented between November 5, 2018 and June 30, 2020. The obligation due to Bryan



FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

Cave Leighton Paisner, LLP is described in greater detail in Proof of Claim No. 10 in the Bankruptcy Case.

101. Defendant Robin Lehner failed to provide information to RMSPC regarding $11,226.32 in unpaid taxes due to the State of New Jersey for 2020. The obligation due to the State of New Jersey is described in greater detail in Proof of Claim No. 12 in the Bankruptcy Case.

102. Defendant Robin Lehner failed to provide information to RMSPC regarding a $572,028 mortgage held by IMH Finans AB secured by real property in Sweden, which he also failed to disclose. The obligation due to IMH Finans AB appears to date back to at least August 15, 2016, and is described in greater detail in Proof of Claim No. 15 in the Bankruptcy Case.

103. RMSPC is informed and believes that in or around October 2019, Defendant Robin Lehner executed and delivered to James Kirschmeyer a promissory note in the amount of $1,000,000. Defendant Robin Lehner failed to provide information to RMSPC regarding that debt or the fact that it had matured in April 2021, the month prior to Defendant Robin Lehner requesting the RMSPC Loan. The obligation due to Mr. Kirschmeyer is described in greater detail in Proof of Claim No. 26 in the Bankruptcy Case.

104. Defendant Robin Lehner failed to provide information to RMSPC regarding a $1,000,000 promissory note dated October 23, 2019 in favor of Merle Whitehead or the fact that that note had matured on April 23, 2021, roughly three (3) weeks before Defendant Robin Lehner and Sure Sports requested the RMSPC Loan. The obligation due to Ms. Whitehead is described in greater detail in Proof of Claim No. 27 in the Bankruptcy Case.

105. Defendant Robin Lehner failed to provide information to RMSPC regarding a $400,000 promissory note dated August 20, 2019 in favor of Anne Meade or the fact that that note had matured on August 20, 2020. Defendant Robin Lehner failed to provide information to RMSPC regarding a new promissory note dated August 21, 2020 in the amount of $448,000 that was delivered to Ms. Meade as part of restructuring the debt incurred on August 20, 2019. The obligation due to Ms. Whitehead is described in greater detail in Proof of Claim No. 28 in the Bankruptcy Case.

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

106. Defendant Robin Lehner failed to provide information to RMSPC regarding a personal guaranty of a loan of approximately $787,921 made on or about May 5, 2016 by Peter Eriksson. The obligation due to Mr. Eriksson is described in greater detail in Proof of Claim No. 30 in the Bankruptcy Case.

107. Defendant Robin Lehner failed to provide information to RMSPC regarding a $200,000 loan from Dr. Mehmet Erk made on January 25, 2019.

108. Defendant Robin Lehner failed to provide information to RMSPC regarding a $100,000 loan from Dr. Michael Vasquez made on April 3, 2020.

109. Defendant Robin Lehner failed to provide information to RMSPC regarding a loan in an undisclosed amount from Jan-1, LLC made on October 23, 2019.

110. Defendant Robin Lehner failed to provide information to RMSPC regarding a loan in an undisclosed amount from Milos Andric made on January 30, 2020.

111. Defendant Robin Lehner failed to provide information to RMSPC regarding a $50,000 loan from Richard Hamister made on March 1, 2019.

112. Defendant Robin Lehner failed to provide information to RMSPC regarding a $300,000 loan from Taurus, LLC made on May 8, 2021 (11 days prior to executing the RMSPC Note).

113. Defendant Robin Lehner failed to provide information to RMSPC regarding a $495,000 loan from Taurus, LLC made on April 26, 2021 (15 days prior to executing the RMSPC Note).

**MATERIAL MISREPRESENTATIONS IN THE MARCH 2022 PFS**

114. The March 2022 PFS no longer listed an interest in Solar Code as an asset of Defendant Robin Lehner. RMSPC is informed and believe that Defendant Robin Lehner transferred all ownership interest in that entity to his father Michael Lehner on or about October 20, 2020.

115. The March 2022 PFS lists as an asset a $15,000,000 note receivable with the notation "Solarcode." RMSPC is informed and believes that this note was given to Defendant

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

Robin Lehner by his father Michael Lehner, purportedly in exchange for Defendant Robin Lehner's membership interest in that limited liability company.

116. RMSPC is informed and believes that Michael Lehner does not have the ability to pay a $15 million obligation, nor is he likely to have that ability at any point in the foreseeable future. Listing that note as an asset at its face value was thus a material misrepresentation of Defendant Robin Lehner's actual financial condition.

117. In the March 2022 PFS, the value of Defendant Robin Lehner's interest in RL Exotics was not changed from the $5 million value that was originally listed in the October 2020 PFS. RMSPC is informed and believes that there were no material changes in that asset and that valuation in the March 2022 PFS was fraudulent for all the same reasons that it was fraudulent when included in the October 2020 PFS.

118. In the March 2022 PFS, the value of Defendant Robin Lehner's interest in Lehner Enterprises was not changed from the $1 million value that was originally listed in the October 2020 PFS. Based on Defendants' statement in the amended *Official Form 106A/B Schedule A/B: Property* [ECF No. 133] that the indirect interest in Solar Code had been transferred out of Lehner Enterprises on October 22, 2020, the continued use of a $1 million valuation in the March 2022 PFS was clearly fraudulent.

**MATERIAL OMISSIONS PRIOR TO THE SECOND AMENDMENT**

119. As noted above, on September 19, 2022 and again on November 16, 2022, RMSPC agreed to extend the maturity date of the Note.

120. At all relevant times, Defendant Robin Lehner and his agent, business partner, loan broker and co-conspirator Sure Sports had an ongoing express obligation to inform RMSPC of any material changes in Defendant Robin Lehner's financial condition. Nevertheless, Defendant Robin Lehner and Sure Sports failed to disclose multiple millions of dollars of obligations that were incurred prior to RMSPC twice agreeing to extend the maturity date of the Note.

121. Defendant Robin Lehner failed to provide information to RMSPC regarding a $600,000 Promissory Note dated February 3, 2022 held by Marc Rosenthal. The obligation due to Mr. Rosenthal is described in greater detail in Proof of Claim No. 5 in the Bankruptcy Case.

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

122. Defendant Robin Lehner failed to provide information to RMSPC regarding a $500,000 Confession of Judgment entered in the Eighth Judicial District Court in Clark County, Nevada on August 16, 2022 in favor of Taurus, LLC in Case No. A-22-857052-C. The obligation due to Taurus, LLC is described in greater detail in Proof of Claim No. 18 in the Bankruptcy Case.

123. Defendant Robin Lehner failed to provide information to RMSPC regarding a $750,000 Confession of Judgment entered in the Eighth Judicial District Court in Clark County, Nevada on or about August 16, 2022 in favor of Taurus, LLC in Case No. A-22-857057-C.

124. Defendant Robin Lehner failed to provide information to RMSPC regarding a $480,500 Confession of Judgment entered in the Eighth Judicial District Court in Clark County, Nevada on or about August 16, 2022 in favor of Taurus, LLC in Case No. A-22-857059-C.

125. Defendant Robin Lehner failed to provide information to RMSPC regarding a $243,000 Confession of Judgment entered in the Eighth Judicial District Court in Clark County, Nevada on or about August 16, 2022 in favor of Taurus II, LLC in Case No. A-22-857061-C.

126. Defendant Robin Lehner failed to provide information to RMSPC regarding a $237,577 Confession of Judgment entered in the Eighth Judicial District Court in Clark County, Nevada on or about August 16, 2022 in favor of Taurus II, LLC in Case No. A-22-857063-C.

127. Defendant Robin Lehner failed to provide information to RMSPC regarding a $525,500 Confession of Judgment entered in the Eighth Judicial District Court in Clark County, Nevada on August 16, 2022 in favor of Taurus VII, LLC. The obligation due to Taurus VII, LLC is described in greater detail in Proof of Claim No. 20 in the Bankruptcy Case.

128. Defendant Robin Lehner failed to provide information to RMSPC regarding a personal guarantee that he gave to Commercial Capital Bidco, Inc. on or about January 31, 2022 regarding a debt in the amount of $1,355,900.

129. Defendant Robin Lehner failed to inform RMSPC that on August 17, 2022, Commercial Capital Bidco, Inc. commenced an action against him in the Milwaukee County Circuit Court for the State of Wisconsin to recover that sum. The obligation due to Commercial Capital Bidco, Inc. is described in greater detail in Proof of Claim No. 22 in the Bankruptcy Case.

130. Defendant Robin Lehner failed to provide information to RMSPC regarding a new $1,500,000 promissory note dated February 3, 2022 in favor of James Kirschmeyer that was given as part of restructuring the $1,000,000 debt incurred in or around October 2019.

131. Defendant Robin Lehner failed to provide information to RMSPC regarding a new $1,500,000 promissory note dated February 3, 2022 in favor of Mearle Whitehead that was given as part of restructuring the $1,000,000 debt incurred on October 23, 2019.

132. Defendant Robin Lehner failed to provide information to RMSPC regarding a $1,586,087.52 Confession of Judgment issued in favor Bredan, LLC on or about November 4, 2022. The obligation due to Bredan, LLC is described in greater detail in Proof of Claim No. 29 in the Bankruptcy Case.

133. Defendant Robin Lehner failed to provide information to RMSPC regarding a personal guarantee of a $700,000 loan from Jackson Lending, LP to Solar Code issued on June 29, 2021.

134. Defendant Robin Lehner failed to provide information to RMSPC regarding a personal guarantee of a loan from C6 Capital Funding, LLC to Solar Code issued on March 1, 2022.

135. Defendant Robin Lehner failed to provide information to RMSPC regarding a $200,000 loan from David Schlee made on November 18, 2020.

136. Defendant Robin Lehner failed to provide information to RMSPC regarding a personal guarantee of a $2,800,000 loan from Deutsche Bank Luxembourg S.A. to Milos Andric on April 24, 2020.

137. Defendant Robin Lehner failed to provide information to RMSPC regarding a $100,000 loan from Digital Asset Redemption made on September 13, 2022.

138. Defendant Robin Lehner failed to provide information to RMSPC regarding a $380,000 loan from Dr. Michael Parentis made on January 1, 2022.

139. Defendant Robin Lehner failed to provide information to RMSPC regarding a personal guarantee of a $3,915,000 loan from Eclipse Service, Inc. to Solar Code issued on January 12, 2022.

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

140. Defendant Robin Lehner failed to provide information to RMSPC regarding a $300,000 loan from Frank C. Muggia made on an undisclosed date.

141. Defendant Robin Lehner failed to provide information to RMSPC regarding a $300,000 "Solar Code investment" (which RMSPC believes to be a loan) made on February 10, 2022.

142. Defendant Robin Lehner failed to provide information to RMSPC regarding a personal guarantee of a loan in an unspecified amount loan on an unspecified date from Jonas Hagerback with the notation in Official Form 106 E/F [ECF No. 44] in the Bankruptcy Case: "Business Debt; SolarCode and Guaranty on Debtor's sister's house in Sweden."

143. Defendant Robin Lehner failed to provide information to RMSPC regarding a $500,000 loan from Metro Park, LLC made on June 10, 2022.

144. Defendant Robin Lehner failed to provide information to RMSPC regarding an involuntary insolvency proceeding commenced against him in the Nacka District Court of Sweden in late 2022.

145. Defendant Robin Lehner failed to provide information to RMSPC regarding an action commenced against him in Milwaukee County, Wisconsin on May 10, 2022, Case No. 2022CV003016, styled *Eclipse Service, Inc. v. SolarCode, LLC, SolarCode Holdings, LLC, Roger M. Lehner, and Robin L. Lehner*. Defendant Robin Lehner failed to provide information to RMSPC regarding his removal of that action to the United States District Court for the Eastern District of Wisconsin, where the case was assigned Case No. 2:22-cv-00757-JPS.

146. Defendant Robin Lehner failed to provide information to RMSPC regarding an action commenced against him in the Supreme Court of New York, Commercial Division, on October 8, 2021 styled *Deutche Bank Luxembourg, S.A. v. Robin Lehner*, Index No. 655899/2021.

**FIRST CLAIM FOR RELIEF**
**DETERMINATION OF NON-DISCHARGEABILITY**
**OF DEBT FOR ACTUAL FRAUD PURSUANT TO 11 U.S.C. § 523(a)(2)(A)**

147. RMSPC incorporates by reference all allegations set forth above.

148. Pursuant to 11 U.S.C. § 523(a)(2)(A), an individual debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition."

149. When Defendant Robin Lehner executed the RMSPC Loan documents, he had no present intention to pay the RMSPC Loan and knew that payment would be impossible.

150. Beginning no later than early 2019 and continuing at least through the month prior to filing his Bankruptcy Case, Defendant Robin Lehner carried out an elaborate loan kiting scheme to provide startup funding for Solar Code, a means of paying for his multi-million dollar home, and pet projects (no pun intended) that included the reptile breeding facility operated by RL Exotics and hundreds of thousands of dollars in exotic fish and coral.

151. Defendant Robin Lehner intentionally overstated the value of his interests in Solar Code, RL Exotics and Lehner Enterprises to convince lenders, including RMSPC, to extend loans.

152. Defendant Robin Lehner repeatedly pledged "first-priority" interests in the VGK Contract, first to RMSPC (which was fortunate enough to arrange for the recording of the Nevada UCC-1 to secure its interest), and later to other creditors, while knowing that the VGK Contract would never generate sufficient proceeds to pay his creditors and that the creditors to whom or to which he had pledged "first priority" interests could not all enjoy the same priority.

153. With the assistance of his agent, business partner, loan broker and co-conspirator Sure Sports, Defendant Robin Lehner actively and deliberately concealed his actual financial condition, first to obtain the RMSPC Loan and later to obtain two extensions of the maturity date of the RMSPC Note.

154. RMSPC is informed and believes that Sure Sports actively participated in Defendant Robin Lehner's loan kiting scheme as a means of collecting hundreds of thousands of dollars in "underwriting" fees when, clearly, no underwriting was performed.

155. Defendant Robin Lehner's failures to disclose material information regarding his financial condition could not have been the result of inadvertence or oversight. As an example, as noted above, Defendant Robin Lehner had procured at least two (2) six-figure loans from Taurus, LLC, neither of which was disclosed to RMSPC, within fifteen (15) days before signing the RMSPC Note. As a further example, Defendant Robin Lehner was aware that million-dollar loans

from James Kirschmeyer and Merle Whitehead had matured in April 2021, a few weeks before the RMSPC Loan documents were signed, but never disclosed those obligations to RMSPC.

156. In the RMSPC *Loan and Security Agreement*, Defendant Robin Lehner expressly agreed not to incur additional debt above $25,000 without the written consent of RMSPC. The closing of the RMSPC Loan was conducted by video conference and a recording was made. In that video recording, at approximately 1 minute 52 seconds, Defendant Robin Lehner was advised of the $25,000 debt cap and responded "OK." Nevertheless, barely a month later, on June 29, 2021, he offered a personal guarantee to Jackson Lending, LP for a $700,000 loan to Solar Code. And, of course, in the year that followed the RMSPC Loan closing, Defendant Robin Lehner took on multiple millions of dollars in additional debt, as described above, none of which was ever disclosed to RMSPC.

157. Pursuant to the representations and warranties set forth in the October 2020 PFS, and pursuant to Section 5.1.2 of the *Loan and Security Agreement*, Defendant Robin Lehner not only agreed to disclose material changes in his financial condition generally, he agreed to advise RMSPC of any litigation commenced against him. Within five (5) months of signing the RMSPC Loan documents, and before RMSPC agreed to the final extension of the maturity date of the RMSPC Note, Defendant Robin Lehner had been sued by Deutche Bank Luxembourg, S.A. As set forth above, several other lawsuits followed, none of which was ever disclosed to RMSPC prior to Defendants filing their Bankruptcy Case.

158. In the absence of Defendant Robin Lehner's false pretenses, false representations, and actual fraud, RMSPC would not have entered into the RMSPC Loan transaction described above and would not have offered either of the requested extensions of the maturity date of the RMSPC Note.

159. RMSPC reliance on Defendant Robin Lehner's false representations was justified and reasonable.

160. RMSPC has sustained damages as a result of Defendant Robin Lehner's false pretenses, fraud, and misrepresentations in an amount to be proven at trial.

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

161. Based on the fraudulent actions of Defendant Robin Lehner, punitive damages are appropriate to the maximum amount allowed under applicable law.

162. RMSPC is entitled to a judgment against Defendants stating that all amounts owed to RMSPC by Defendants be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

163. As a result of Defendant's foregoing actions, RMSPC has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest.

**SECOND CLAIM FOR RELIEF**
**DETERMINATION OF NON-DISCHARGEABILITY**
**OF DEBT FOR FALSE STATEMENTS IN WRITING**
**PURSUANT TO 11 U.S.C. § 523(a)(2)(B)**

164. RMSPC incorporates by reference all allegations set forth above.

165. Pursuant to 11 U.S.C. § 523(a)(2)(B), an individual debtor is not discharged from any debt obtained through the use of "a statement in writing- (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."

166. As described in detail above, Defendant Robin Lehner, individually or through his agent, business partner, loan broker and co-conspirator Sure Sports, presented at least seven (7) documents to RMSPC that were materially false:

a. The "Robin Lehner Opportunity Analysis" indicated that the loan being sought would be used to retire all existing "contract-based debt" (i.e. non-tort debt) apart from a $1.75 million private note secured by Debtors' home, which would be "rolled" into a mortgage within 90 days. That statement was materially false in at least four (4) respects. First, the "Robin Lehner Opportunity Analysis" did not disclose all contract-based based debt. Second, the RMSPC Loan, if extended, would not be in an amount sufficient to satisfy Defendant Robin Lehner's outstanding debt. Third, RMSPC is informed and believes that the document understated the amount of the actual debt secured by Defendants'

home. Finally, the document was false in that it suggested that Defendants would be eligible for a conventional mortgage, when Defendants and Sure Sports fully understood that Defendants could not satisfy underwriting standards for a conventional mortgage.

b. The October 2020 PFS includes multiple affirmative material misrepresentations and multiple material omissions, as described in detail above.

c. The RMSPC Loan and Security Agreement includes affirmative and negative covenants, which Defendant Robin Lehner and his agent, business partner, loan broker and co-conspirator Sure Sports knew were not and could not be satisfied.

d. The March 2020 PFS includes multiple affirmative misrepresentations and multiple material omissions, as described in detail above.

e. The First Amendment falsely states that the extension of the maturity date of the RMSPC Note would not violate any other obligations of Defendant Robin Lehner, when in fact events of default under other loan agreements had already occurred and multiple lawsuits were pending.

f. The Pledge Agreement that was attached as an exhibit to the First Amendment, includes the following statement: "Borrower represents and warrants to Lender that Borrower is to receive Fifteen Million Dollars (USD $15,000,000.00) from SolarCode, LLC." As discussed in detail above, the representation that Solar Code, a privately-held company with no ongoing business, no pending business, no income (or, in fact, significant ongoing net losses), no assets, and no intellectual property, had the ability to pay a purported $15 million note was materially misleading.

g. The Second Amendment falsely states that the extension of the maturity date of the RMSPC Note would not violate any other obligations of Defendant Robin Lehner, when in fact events of default under other loan agreements had already occurred and multiple lawsuits were pending.

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

167. Defendant Robin Lehner solicited and received significant sums of money from RMSPC through the RMSPC Loan by making materially false and misleading representations regarding outstanding lawsuits and judgments against Defendant, Defendant's assets, Defendant's performance of obligations owed to other parties, and Defendant Robin Lehner's intent and ability to repay the RMSPC Loan.

168. The above representations were false when made by Defendant Robin Lehner, who knew such representations to be false when made.

169. Defendant Robin Lehner, through false pretenses and fraud, acted to induce RMSPC to enter into the RMSPC Loan where Defendant had no intention or reasonable expectation of repaying the RMSPC Loan and, in fact, knew that he would be unable to repay the RMSPC Loan due to the various preexisting debts and claims against him that he failed to disclose to RMSPC and his loan kiting scheme to provide funding to Solar Code.

170. In the absence of Defendant Robin Lehner's false pretenses, false representations, and actual fraud, RMSPC would not have entered into the RMSPC Loan transaction described above.

171. In the absence of Defendant Robin Lehner's false pretenses, false representations, and actual fraud, RMSPC would not have twice extended the maturity date of the RMSPC Note, as described above.

172. At the time RMSPC entered into the above-referenced transactions, RMSPC did not know that the foregoing representations by Defendant Robin Lehner were false.

173. RMSPC reliance on Defendant Robin Lehner's false representations was justified and reasonable.

174. RMSPC has sustained damages as a result of Defendant Robin Lehner's false pretenses, fraud, and misrepresentations in an amount to be proven at trial.

175. Based on the fraudulent actions of Defendant Robin Lehner, punitive damages are appropriate to the maximum amount allowed under applicable law.

176. RMSPC is entitled to a judgment against Defendants stating that all amounts owed to RMSPC by Defendants be excepted from discharge under 11 U.S.C. § 523(a)(2)(B).

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

177. As a result of Defendant's foregoing actions, RMSPC has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest.

**THIRD CLAIM FOR RELIEF**
**DECLARATORY RELIEF REGARDING THE EFFECT OF 11 U.S.C. § 552**

178. RMSPC incorporates by reference all allegations set forth above.

179. An actual, ripe and justiciable controversy now exists between Defendants and RMSPC concerning the effect of 11 U.S.C. § 552 on RMSPC's security interest in the VGK Contract and monies due to Defendant Robin Lehner following the Petition Date.

180. The VGK Contract is a "general intangible," and even more specifically a "payment intangible," as defined by Nevada's adoption of the Uniform Commercial Code (UCC), Nev. Rev. Stat. 104.1101, *et seq*.

181. RMSPC properly perfected a security interest in the VGK Contract by recording the Nevada UCC-1 with the Nevada Secretary of State.

182. 11 U.S.C. § 552(a) provides, in relevant part: "Except as provided in subsection (b) of this section, property acquired by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."

183. In typical employment arrangements, post-petition work by a debtor pursuant to an employment agreement gives rise to an account receivable as work is performed that is deemed to be "after-acquired property." 11 U.S.C. § 552(a) generally operates to terminate a security interest in after-acquired property.

184. In this case, however, RMSPC is informed and believes that Defendant Robin Lehner has not performed work on behalf of the Vegas Golden Knights since at least August 2022. RMSPC is informed and believes that in or around August 11, 2022, Defendant Robin Lehner announced that he would require double hip surgery and would thus miss all of the 2022-2023 NHL season.

185. As discussed in detail above, the VGK Contract provides Defendant Robin Lehner with a "guaranteed" stream of payments that is not dependent upon him providing any particular



FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263

services (or, indeed, any services) at any particular time. Defendant Robin Lehner's right to receive a stream of payments from the Vegas Golden Knights thus vested upon execution of the VGK Contract.

186. Because Defendant Robin Lehner's rights to payment under the VGK Contract vested upon execution of that document, any payments he has received or will receive cannot be deemed "after-acquired property" and remain subject to RMSPC's security interest notwithstanding 11 U.S.C. § 552(a). RMSPC requests entry of a Declaratory Judgment to that effect.

187. The "after-acquired property rule set forth in 11 U.S.C. § 552(a) has a statutory exception. 11 U.S.C. § 552(b) provides, in relevant part: "Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

188. As an alternative form of relief, should this Court determine that the post-petition stream of payments that Defendant Robin Lehner is currently receiving or scheduled to receive is subject to 11 U.S.C. § 552(a), RMSPC respectfully requests that this Court enter a Declaratory Judgment to the effect that its interest in the VGK Contract is subject to the exception to the after-acquired property rule set forth in 11 U.S.C. § 552(b), whether under the plain language of that statute or as a result of the Court exercising its equitable powers.

**REQUEST FOR RELIEF**

Based on the foregoing, RMSPC requests judgment against Defendants as follows:

A. For Judgment against Defendants for an amount to be determined at trial, plus accrued and accruing interest;

B. For Judgment determining that all of the claims of RMSPC are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B);

C. For Declaratory Judgment to the effect that the post-petition stream of income to which Defendant Robin Lehner is entitled under the VGK Contract is not subject to the "after-acquired property" provision of 11 U.S.C. § 552(a) and thus remains subject to RMSPC's properly perfected security interest.

D. Alternatively, for Declaratory Judgment to the effect that the post-petition stream of income to which Defendant Robin Lehner is entitled should be deemed "proceeds" of the VGK Contract under 11 U.S.C. § 552(b) and thus exempt from the "after-acquired property" provision of 11 U.S.C. § 552(a) and subject to RMSPC's properly perfected security interest.

E. For reasonable attorneys' fees incurred herein;

F. For costs of suit incurred herein;

G. For punitive damages in the maximum amount allowed under applicable laws; and,

H. For such other and further relief as the Court deems just and proper.

Dated this 15th day of May 2023.

**FLEMING LAW FIRM, PLLC**

*BY: SCOTT D. FLEMING*
SCOTT D. FLEMING, ESQ.
Nevada Bar No. 5638
8250 West Charleston Boulevard
Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 743-6263
E-Mail: scott@fleminglawlv.com
*Attorney for RMSPC Funding, LLC*

FLEMING LAW FIRM, PLLC
8250 West Charleston Boulevard, Suite 100
Las Vegas, Nevada 89117
(702) 743-6263