GARMAN TURNER GORDON LLP
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Phone: (725) 777-3000
Fax:     (725) 777-3112
*Attorneys for Eclipse Service Inc.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>ROBIN LINUS LEHNER AND<br>DONYA TINA LEHNER,<br><br>                Debtors. | Case No.  BK-22-14616-NMC<br>Chapter 7 |
| ECLIPSE SERVICE INC.,<br><br>                Plaintiff,<br><br>v.<br><br>ROBIN LINUS LEHNER AND<br>DONYA TINA LEHNER,<br><br>                Defendants. | Adversary Pro. No.<br><br><br>**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(A)(2) AND BANKRUPTCY RULE 4007** |

Eclipse Service Inc. ("Eclipse" or "Plaintiff") respectfully submits its *Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2) and Bankruptcy Rule 4007* ("Complaint") seeking an adjudication that the debt owed by the above-captioned debtors to Eclipse is not dischargeable pursuant to Section 523(a)(2) and Bankruptcy Rule 4007.[1]  Eclipse complains and alleges as follows:

---

[1] All references to "Chapter" or "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code (the "Bankruptcy Code"); all references to "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; all references to "LR" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

## PARTIES

1. Eclipse is a Wisconsin corporation with a principal office located at 10031 S. Woodside Court, Franklin, Wisconsin 53132.

2. Defendants Robin Linus Lehner ("R. Lehner") and Donya Tina Lehner (together, "Defendants") are residents of Clark County, Nevada, residing at 9501 Balatta Canyon Court, Las Vegas, Nevada 89144.

3. Eclipse is informed and believes that between October 15, 2020 and December 30, 2022, Defendants were married.

4. Defendants' marital community is liable for all debts incurred by either spouse during their marriage, and fraud committed by one spouse may be imputed to the other. Eclipse thus seeks, among other relief, judgment determining that both Defendants are liable for its debt and that such debt is nondischargeable with respect to both Defendants.

## JURISDICTION AND VENUE

5. On December 30, 2022, Defendants commenced a joint voluntary Chapter 7 case in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), Case No. 22-14616-NMC (the "Bankruptcy Case").

6. This is an adversary proceeding pursuant to Section 523(a)(2) to determine the nondischargeability of a debt owed by Defendants to Eclipse.

7. This Court has subject matter jurisdiction over claims related to the nondischargeability of debt pursuant to 28 U.S.C. §§ 157 and 1334(b) and the order of reference set forth in Local Rule 1001(b)(1).

8. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and arises in and is related to the Bankruptcy Case.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a) because the Bankruptcy Case was filed in this District and is pending before this Court.

10. Pursuant to LR 7008.1, Eclipse consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## GENERAL ALLEGATIONS

11. Prior to October 22, 2020, R. Lehner owned 100% of the membership of Lehner Enterprises, LLC, which owned 100% of SolarCode Holdings, LLC ("SolarCode Holdings"), which in turn owned 100% of SolarCode, LLC ("SolarCode").

12. Effective October 22, 2020, R. Lehner caused Lehner Enterprises, LLC to assign its 100% membership interest in SolarCode Holdings to his father, Michael Roger Lehner ("M. Lehner") in exchange for a promissory note in the principal amount of $15,300,000 with an immediate October 20, 2020 maturity date, plus certain profit interests in SolarCode Holdings and its subsidiaries (the "Promissory Note").

13. The transfer described in the preceding paragraph was never disclosed to Eclipse.

14. Instead, R. Lehner, individually and through his authorized agents, stated that R. Lehner held an ownership interest in the SolarCode entities.

15. The Promissory Note was not repaid on the October 22, 2020 maturity date and remains unpaid today.

16. R. Lehner continued to work closely with his father, M. Lehner, on the SolarCode business in 2020, 2021, and 2022.

17. John Hochbaum ("Hochbaum"), the president of ICS Funding, was engaged by R. Lehner, as well as M. Lehner and SolarCode, as their authorized agent and representative to obtain funding to facilitate the SolarCode business ventures.

18. In furtherance of obtaining funding, R. Lehner authorized his agent, Hochbaum, to provide funding originators and potential lenders with: (i) R. Lehner's Standard Player's Contract with the Vegas Golden Nights commencing July 1, 2020 (the "NHL Contract"); (ii) R. Lehner's Personal Financial Statement dated December 1, 2020 (the "December 2020 PFS"); (iii) R. Lehner's tax returns; and (iv) R. Lehner's Experian Credit Report for July 19, 2021.

19. Kevin Shibilski ("Shibilski") of Suncraft Holdings LLC is a loan broker/funding originator acquainted with Hochbaum through a network of funding originators. Hochbaum, as authorized agent and representative for R. Lehner and with R. Lehner's consent, sought Shibilski's

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

assistance in obtaining a short-term loan for R. Lehner to facilitate R. Lehner's business dealings with SolarCode.

20. On October 11, 2021, Eclipse, through its owner, Steven Hribar ("Hribar"), received an email from Shibilski seeking a short term commercial loan of $375,000 for 150 days, providing a 25% interest rate.

21. Eclipse is informed and believes that all of Shibilski's communications with Hribar regarding a potential loan for R. Lehner were made at Hochbaum's direction and with Hochbaum's consent, in his capacity as R. Lehner's agent and representative.

22. The October 11, 2021 email solicitation further described the borrower as a "[v]ery strong borrower (pro athlete with 5 year guaranteed contract, 5MM per year)" and provided assurance of payment stating, "his monthly NHL pay resumes this month, so he can service and repay without his company's receivable."

23. In his capacity as authorized agent and representative for R. Lehner, Hochbaum provided Shibilski with R. Lehner's NHL Contract, December 2020 PFS, 2019 tax return, and a portion of R. Lehner's Experian Credit Report for July 19, 2021.

24. To entice Eclipse to provide a short-term loan to R. Lehner, on October 11, 2021, acting at the direction of Hochbaum, R. Lehner's authorized agent, Shibilski sent emails to Hribar providing R. Lehner's NHL Contract and December 2020 PFS.

25. Eclipse is informed and believes that R. Lehner authorized and directed his agent and representative, Hochbaum, to authorize Shibilski to provide the NHL Contract and December 2020 PFS to Eclipse as part of the request for a commercial loan.

26. Shibilski and Hochbaum assured Eclipse that the NHL Contract was a guaranteed contract and therefore R. Lehner had the financial wherewithal to repay the requested loan even if he was injured. Hochbaum further told Eclipse that because of the nature of the NHL Contract, neither Eclipse nor any one else could be granted a security interest in the NHL Contract.

27. The December 2020 PFS identified the following assets and liabilities of R. Lehner, representing that R. Lehner has a "NET WORTH" of $49,567,204, comprised of the following assets and liabilities:

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

- Assets totaling $57,602,204 comprised of: (i) Cash on Hand of $117,704; (ii) Real Estate of $3,714,500; (iii) Partnership/PC Interests/S Corporations $26,000,000; (iv) NHL Pension – 100% fully vested - $200,000 annually; (v) 2020 tax refund receivable of $2,000,000; and (vi) 2020 rent receivable of $120,000.
- Liabilities totaling $8,035,000 comprised of: (i) Notes Payable of $4,430,000; (ii) Accounts Payable of $60,000; and (iii) Mortgage Debt of $3,545,000.

28. On October 14, 2021, Shibilski also sent R. Lehner's 2019 tax return and excerpt of R. Lehner's Experian Credit Report for July 19, 2021 to Hribar, reflecting a FICO Score of 746 and omitting any of the debt identified in the preceding paragraph.

29. Eclipse is informed and believes that R. Lehner authorized and directed his agent and representative, Hochbaum, to authorize Shibilski to provide R. Lehner's 2019 tax return and excerpt of Experian Credit Report to Eclipse as part of R. Lehner's request for a commercial loan from Eclipse.

30. As further enticement to provide the requested loan to R. Lehner, on October 15, 2021, Shibilski, at the direction of R. Lehner's authorized agent, Hochbaum, provided a copy of a Power Purchase Agreement between SolarCode LLC and Agronomics by G Square Land Development, stating "[h]ere is the Solarcode domestic contract with Agronomics. It's a real company with contracts and assets. Their guarantee has some value, even though Robin is the primary source of repayment."

31. Later that day, at 1:20 p.m., Eclipse's counsel, Luke Chiarelli of Mawicke & Goisman, S.C., sent an email to Shibilski confirming that Eclipse was relying on R. Lehner's representations regarding his financial condition and NHL salary as the source of repayment for the proposed loan.

32. At 3:00 p.m. on October 15, 2021, Shibilski, at the direction of R. Lehner's authorized agent, Hochbaum, emailed Hribar and Eclipse's counsel, Luke Chiarelli, attaching the National Hockey League/National Hockey League Players' Association Memorandum of Understanding stating "[p]age 63 of the attached collective bargaining agreement governs Robin's

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

posthumous contract guarantee.  He and his heirs will be paid in full should anything happen to him."

33. Eclipse is informed and believes that R. Lehner authorized and directed his agent and representative, Hochbaum, to authorize Shibilski to provide the National Hockey League/National Hockey League Players' Association Memorandum of Understanding to Eclipse.

34. In reliance upon the information provided by R. Lehner's authorized agent, Hochbaum, including the December 2020 PFS, the NHL Contract, 2019 tax return, and the Experian Credit Report, on the evening of October 15, 2021, Eclipse's counsel advised that Eclipse was willing to lend $308,000 to R. Lehner to be funded on October 19, 2021 and repaid with agreed-upon fixed interest as follows: (i) $30,000 on November 30, 2021; (ii) $30,000 on December 15, 2021; (iii) $30,000 on December 31, 2021; and (iv) $320,000 on January 19, 2022, with daily default of $2,000 per day.

35. During the loan negotiations, Hribar and his counsel spoke with Hochbaum, R. Lehner's authorized agent, regarding the proposed loan and received further assurances of R. Lehner's ability to repay the proposed loan.

36. On October 18, 2021, Eclipse's counsel emailed Shibilski a copy of the Business Note for the proposed loan and confirmed that R. Lehner would need to sign the Business Note in person, before a notary, at Wilson, Elser, Moskowitz, Edelman & Dicker LLP ("Wilson Elser").

37. On October 18, 2021, R. Lehner personally appeared at the law firm of Wilson Elser then located at 6689 Las Vegas Blvd. South, Suite 200, Las Vegas, NV 89119 and executed the Business Note before Kathryn Brooks, a notary public employed by Wilson Elser.

38. The Business Note dated October 18, 2021 (the "2021 Note") expressly states that R. Lehner, M. Lehner, and SolarCode, jointly and severally, are the Maker of the 2021 Note and they promise to pay Eclipse $410,000 on the following payment schedule: (i) $30,000 on November 30, 2021; (ii) $30,000 on December 15, 2021; (iii) $30,000 on December 31, 2021; and (iv) $320,000 on January 19, 2022, with daily default of $2,000 per day (the "First Loan").

39. The 2021 Note further provides that the $308,000 loan proceeds will be disbursed as follows: (i) $275,000 to Maker; (ii) $28,000 as a broker fee, and (iii) $5,000 to Eclipse's counsel.

40. On October 18, 2021, at 4:09 p.m., R. Lehner personally texted Hribar the wire instruction for where Eclipse should send the loan proceeds.

41. The wire instructions provided by R. Lehner are to a Bank of America account ending in 9593, which is the same bank account to which payment must be sent to Lehner Enterprises under the Promissory Note. The Promissory Note states that R. Lehner is the owner of the account.

42. As directed by R. Lehner, on October 19, 2021, Eclipse wired $275,000 of the loan proceeds to the bank account at Bank of America ending in 9593.

43. Eclipse relied on R. Lehner's December 2020 PFS, NHL Contract, 2019 tax return, and Experian Credit Report in making the First Loan.

44. Before making the First Loan, Eclipse made clear to R. Lehner, through his authorized agent, that Eclipse was relying on R. Lehner's written and oral representations of R. Lehner's financial condition establishing his ability to repay the First Loan.

45. At no point did R. Lehner or his authorized agent, Hochbaum, directly or indirectly through Shibilski tell Eclipse that R. Lehner's December 2020 PFS omitted significant debts or advise that R. Lehner has significant liabilities not reflected in the December 2020 PFS, 2019 tax return, or the Experian Credit Report.

46. R. Lehner, M. Lehner, and SolarCode failed to timely make the first payment of $30,000 to Eclipse due on November 30, 2021 under the 2021 Note.

47. Upon the default of the 2021 Note, Hribar repeatedly called and texted R. Lehner, as well as R. Lehner's authorized agent, Hochbaum, and Shibilski, seeking payment.

48. Among other communications, on December 6, 2021, Hribar texted R. Lehner stating "Please return my call today…….I was inquiring about the November 30, 2021 payment that was due and I have not received payment and wire instructions were sent last week and confirm. Now today NO ONE is talking call or returning communications so let me know next steps today???"

49. The next day, December 7, 2021, Hribar again texted R. Lehner stating "Please return my call today…….I was inquiring about the November 30, 2021 payment that was due and

I have not received payment and wire instructions were sent last week and confirm. Now today NO ONE is talking call or returning communications so let me know next steps today??? Please include the late fee too!!!"

50. Twenty-one minutes later, R. Lehner texted Hribar stating "Ok they sent to you yesterday sorry about yesterday I just got of the ice. I'll make sure late fee comes as well. Sorry for this."

51. During this time, R. Lehner also spoke with Hribar and R. Lehner assured Hribar that he would personally repay the First Loan if SolarCode, one of the other Makers of the 2021 Note, could not pay it.

52. Eclipse ultimately received two installment payments due under the 2021 Note in December.

53. In late December, Hochbaum, R. Lehner's authorized agent, approached Eclipse about providing a second loan.

54. In connection with the request for an additional loan, on December 31, 2021, R. Lehner treated Hribar and his fiancée, accompanied by M. Lehner, to a Vegas Golden Knights game and gifted Hribar several signed R. Lehner jerseys.

55. In addition to the NHL Contract, the December 2020 PFS, R. Lehner's 2019 tax return, and the R. Lehner's Experian Credit Report excerpt provided less than three months prior, in late December 2021, Hochbaum, R. Lehner's authorized agent and representative, also provided Eclipse with various agreements and documents relating to SolarCode's business ventures.

56. Among other documents, Hochbaum, R. Lehner's authorized agent and representative, sent Hribar: (i) the Power Purchase Agreement with Revenue Share and Equipment Sales between SolarCode LLC, as seller, and Agronomics by G Square Land Development, as buyer; (ii) multiple emails confirming proof of funds for a $110 million investment into the SolarCode business; (iii) a letter from Millies Engineering Group, engaged by SolarCode, with respect to projects in Yuma, California and Morocco relating to green energy and projecting billions of dollars of revenue; and (iv) an appraisal by BDO USA, LLP valuing SolarCode at $10,130,336,000 as of October 15, 2021 based upon the following three energy contracts (which

Eclipse now knows were not even reviewed by the appraiser): (a) 550 MW Morocco/Sand; (b) PPA Plant – Agronomics; and (c) Ecoboost – Waste to Water (collectively, the "SolarCode Documents").

57. Eclipse is informed and believes that R. Lehner authorized and directed his agent and representative, Hochbaum, to provide the SolarCode Documents to Eclipse.

58. M. Lehner, R. Lehner's father, and Hochbaum, R. Lehner's authorized agent, both told Hribar that the SolarCode business was nearing completion of its funding, which was expected to be completed any day, and that they had an appraisal valuing the SolarCode business at ten billion dollars.

59. Despite the fact that less than three months had passed since the First Loan was provided by Eclipse, Hochbaum, as R. Lehner's authorized agent, was pushing Eclipse to fund the new loan very quickly, which loan was supposed to be a very short term bridge loan.

60. Hochbaum, R. Lehner's authorized agent, also assured Hribar that he could rely on the two million tax refund reflected in the December 2020 PFS, in addition to the guaranteed NHL Contract, for repayment.

61. In reliance on the NHL Contract, the December 2020 PFS, R. Lehner's 2019 tax return, and the R. Lehner's Experian Credit Report, on January 8, 2022, Eclipse agreed to provide a new loan that would pay off the balance of the First Loan and provide an additional funding.

62. On Saturday, January 8, 2022, Hochbaum requested that Eclipse prepare the new loan documents on Sunday so that they could be completed by Monday, January 10, 2022, as R. Lehner had the day off and would be able to appear in person before a notary and execute the loan documents.

63. On January 13, 2022, R. Lehner and M. Lehner executed, in person at Wilson Elser before a notary public, the Business Note in the principal amount of $3,915,000 (the "2022 Note").

64. The 2022 Note expressly states that R. Lehner, M. Lehner, and SolarCode, jointly and severally, are the Maker and they promise to pay Eclipse $3,915,000 on the following payment schedule: (i) $60,000 on February 15, 2022; (ii) $30,000 on February 28, 2022; (iii) $30,000 on March 15, 2022; (iv) $30,000 on March 31, 2022; (v) $765,000 on April 15, 2022; (vi) $750,000

on or before January 15, 2023; (vii) $750,000 on or before January 15, 2024; (viii) $750,000 on or before January 15, 2025; (ix) $750,000 on or before January 15, 2026 (the "Second Loan," and together with the First Loan, the "Loans").

65. Concurrently therewith, SolarCode Holdings executed the Collateral Assignment of Membership Interest, whereby SolarCode Holdings collaterally assigned its 100% membership interest in SolarCode as security for the 2022 Note.

66. Hochbaum, R. Lehner's authorized agent, told Hribar that SolarCode owned the patents for the proprietary design and manufacturing necessary for the SolarCode business.

67. R. Lehner, through his authorized agent, Hochbaum, negotiated and agreed to the repayment terms set forth in the 2022 Note.

68. Neither R. Lehner, M. Lehner, or SolarCode made any of the scheduled payments due under the 2022 Note.

69. Eclipse would not have made the Loans had Eclipse known that R. Lehner's December 2020 PFS materially misrepresented R. Lehner's actual assets, including grossly overstating the value of R. Lehner's interest in partnerships and S corporations at $26,000,000 and falsely stating that R. Lehner was entitled to a $2,000,000 tax refund.

70. Eclipse would not have made the Loans had Eclipse known that R. Lehner's Experian Credit Report materially misrepresented R. Lehner's actual financial condition and liabilities.

71. Eclipse would not have made the Loans had Eclipse known that R. Lehner's December 2020 PFS materially misrepresented R. Lehner's liabilities omitting millions of dollars of obligations as further set forth herein.

72. Eclipse would not have made the Loans had Eclipse known that R. Lehner had, among potentially others, the following liabilities that were omitted from the December 2020 PFS and were intentionally not disclosed to Eclipse, but have been discovered in connection with the Bankruptcy Case and the Wisconsin Litigation (defined below):

- A personal guaranty of a loan of approximately $787,921 made on or about May 5, 2016 by Peter Eriksson as more fully set forth in Proof of Claim No. 30 in the Bankruptcy Case.

- A $1,000,000 loan from Jan-1, LLC, memorialized by a promissory note dated October 23, 2019, maturing on March 23, 2021.

- A $1,000,000 loan from James Kirschmeyer in October 2019 as more fully set forth in Proof of Claim No. 26 in the Bankruptcy Case.

- A $1,000,000 loan from Merle Whitehead in October 2019 as more fully set forth in Proof of Claim No. 27 in the Bankruptcy Case.

- A promissory note made by R. Lehner in favor of JHB Collective, LLC in the principal amount of $887,500 dated November 15, 2019 and maturing July 1, 2020, as more fully set forth in Amended Proof of Claim No. 4 in the Bankruptcy Case.

- Unpaid legal fees of $139,115.28 due to the law firm of Bryan Cave Leighton Paisner, LLP for invoices presented between November 5, 2018 and June 30, 2020, as more fully set forth in Proof of Claim No. 10 in the Bankruptcy Case.

- A $400,000 loan from Anne Meade in August 2020 as more fully set forth in Proof of Claim No. 28 in the Bankruptcy Case.

- Unpaid taxes due of $11,226.32 due to the State of New Jersey for 2020, as more fully set forth in Proof of Claim No. 12 in the Bankruptcy Case.

- A $572,028 mortgage held by IMH Finans AB secured by real property in Sweden, as more fully set forth Proof of Claim No. 15 in the Bankruptcy Case.

- A $300,000 loan from Taurus, LLC made on or about April 28, 2021 as more fully set forth in Proof of Claim No. 18 in the Bankruptcy Case.

- A $495,000 loan from Taurus, LLC made on or amount April 28, 2021 as more fully set forth in Proof of Claim No. 18 in the Bankruptcy Case.

- A $350,000 loan from Taurus, LLC made on or about June 10, 2021 as more fully set forth in Proof of Claim No. 18 in the Bankruptcy Case.

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

- A $175,000 loan from Taurus II, LLC made on or about June 15, 2021 as more fully set forth in Proof of Claim No. 19 in the Bankruptcy Case.
- A $192,077 loan from Taurus II, LLC made on or about June 24, 2021 as more fully set forth in Proof of Claim No. 19 in the Bankruptcy Case.
- A $400,000 loan from Tauraus VII, LLC made on or about June 15, 2021 as more fully set forth in Proof of Claim No. 20 in the Bankruptcy Case.
- A $6,500,000 loan from RMSPC Funding, LLC on or about May 18, 2021 as more fully set forth Proof of Claim No. 16 in the Bankruptcy Case.
- A promissory note from R. Lehner in favor of South River Capital, LLC in the amount of $4,430,000 dated November 6, 2020, maturing June 15, 2021.
- A promissory note for $3,275,000 from R. Lehner in favor of ASLA Capital, LLC dated March 1, 2021, initially maturing June 15, 2021 and extended to August 15, 2021.
- A promissory note for $380,000 from R. Lehner in favor of Dr. Michael Parentis dated January 1, 2022, maturing July 1, 2022.
- The following loan obligations disclosed in Defendants' schedules filed in the Bankruptcy Case: (i) $200,000 loan from Dr. Mehmet Erk made on January 25, 2019; (ii) a $100,000 loan from Dr. Michael Vasquez made on April 3, 2020; (iii) a $50,000 loan from Richard Hamister made on March 1, 2019; (iv) a personal guaranty of a $1,000,000 promissory note to DMC Financing, LLC on January 21, 2021; (v) a personal guaranty of a $895,000 promissory note to Bredan, LLC on December 22, 2020; (vi) a $200,000 loan from David Schlee on November 18, 2020; (vii) a personal guaranty of a $2,800,000 credit facility with Deutsche Bank Luxembourg S.A. on April 24, 2020; and (viii) numerous loan-related debts arising before October 2021 scheduled by Defendants in an unknown amount.

73. On May 10, 2022, Eclipse filed its *Complaint* against R. Lehner, M. Lehner, SolarCode Holdings, and SolarCode for breach of the 2022 Note, seeking a monetary judgment and an order directing turnover of the membership interest pursuant to the Collateral Assignment

of Membership Interest, which case is currently pending in the United States District Court for the Eastern District of Wisconsin, Case No. 2022-cv-757 (the "Wisconsin Litigation").

74. Upon the commencement of the Bankruptcy Case, the Wisconsin Litigation was stayed with respect to R. Lehner, but is proceeding against the remaining defendants.

## FIRST CLAIM FOR RELIEF
## DETERMINATION OF NONDISCHARGEABILITY OF DEBT FOR FALSE STATEMENTS IN WRITING PURSUANT TO 11 U.S.C. § 523(a)(2)(B)

75. Eclipse incorporates by reference all allegations set forth above.

76. Pursuant to Section 523(a)(2)(B), an individual debtor is not discharged from any debt obtained through the use of "a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."

77. As described in detail above, R. Lehner, through his authorized agent, Hochbaum, presented documents through Shibilski regarding Defendants' financial condition to Eclipse that were materially false.

78. The December 2020 PFS includes multiple affirmative material misrepresentations and multiple material omissions regarding R. Lehner's assets and liabilities as described in detail above.

79. The Experian Credit Report excerpt likewise omitted R. Lehner's significant debt obligations and gave the appearance that R. Lehner had limited debt and good credit.

80. The December 2020 PFS and Experian Credit Report excerpt were both materially false statements in writing respecting R. Lehner's financial condition.

81. R. Lehner and his authorized agent, Hochbaum, knew that the December 2020 PFS was materially false and did not accurately reflect Defendants' financial condition when the Loans were solicited from Eclipse.

82. R. Lehner ratified the actions and representations of his authorized agent and representative, Hochbaum, including by personally appearing at Eclipse's chosen law firm to sign the Notes before a notary and texting Hribar the wire instructions for the First Loan.

83. R. Lehner and Hochbaum intended Eclipse to rely on the materially misleading December 2020 PFS and Experian Credit Report and intentionally concealed R. Lehner's multi-million dollar loan obligations identified above.

84. As R. Lehner and Hochbaum intended, Eclipse relied on the December 2020 PFS and Experian Credit Report in making the Loans.

85. Eclipse, through its counsel, made clear that Eclipse was relying on the representations regarding R. Lehner's financial condition to ensure repayment of the Loans.

86. Eclipse would not have made the Loans had Eclipse received an accurate personal financial statement reflecting R. Lehner's true financial condition.

87. At the time Eclipse provided the Loans, Eclipse did not know that the December 2020 PFS and Experian Credit Report excerpt was materially false or that R. Lehner was personally obligated to repay millions of dollars of existing and undisclosed loans.

88. Eclipse's reliance on R. Lehner's false representations was justified and reasonable.

89. Eclipse has sustained damages as a result of R. Lehner's false pretenses, fraud, and misrepresentations in an amount to be proven at trial.

90. Eclipse is entitled to a judgment against Defendants stating that all amounts owed to Eclipse by Defendants be excepted from discharge under Section 523(a)(2)(B).

91. As a result of Defendants' foregoing actions, Eclipse has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest.

**SECOND CLAIM FOR RELIEF**
**DETERMINATION OF NONDISCHARGEABILITY**
**OF DEBT FOR ACTUAL FRAUD PURSUANT TO 11 U.S.C. § 523(a)(2)(A)**

92. Eclipse incorporates by reference all allegations set forth above.

93. Pursuant to Section 523(a)(2)(A), an individual debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

obtained by … false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition."

94. With the assistance of his authorized agent and representative, Hochbaum, R. Lehner actively and deliberately omitted and concealed R. Lehner's loan and guaranty obligations exceeding ten million dollars in order to obtain the Loans from Eclipse.

95. Eclipse is informed and believes that Shibilski's communications with Hribar regarding a potential loan for R. Lehner, including all omissions, were made at Hochbaum's direction and with Hochbaum's consent, in his capacity as R. Lehner's agent and representative.

96. R. Lehner's loan obligations identified above exceeding ten million dollars as of October 2021 are material facts.

97. R. Lehner and his authorized agent and representative, Hochbaum, knew that Eclipse was relying on R. Lehner's financial ability to repay the Loans when making the Loans and intentionally omitted and concealed that R. Lehner had loan obligations exceeding ten million.

98. R. Lehner and his authorized agent and representative, Hochbaum, knew that Eclipse was relying on the represented two million tax refund, which representation was false.

99. When R. Lehner executed the Notes, he had no present intention to repay the Loans and knew that payment would be impossible due to his existing loan and guaranty obligations identified above.

100. R. Lehner and his authorized agent and representative, Hochbaum, intentionally omitted and concealed that R. Lehner had no present intention to repay the Loans and knew that payment would be impossible due to R. Lehner's existing loan and guaranty obligations identified above.

101. R. Lehner, in seeking a loan from Eclipse, had a duty to disclose that the alleged two million tax refund was not available to repay Eclipse.

102. R. Lehner, in seeking a loan from Eclipse, had a duty to disclose the existences of his loan and guaranty obligations to Eclipse and failed to do so.

103. R. Lehner, in seeking a loan from Eclipse, had a duty to disclose that he had no present intention or ability to repay the Loans.

104. Additionally, R. Lehner, with the assistance of his authorized agent and representative, Hochbaum, actively and deliberately mislead Eclipse with respect to SolarCode's ability to obtain investment needed for its business.

105. R. Lehner, acting through his authorized agent and representative, Hochbaum, provided the SolarCode Documents to further induce Eclipse to make the Second Loan.

106. Hochbaum, R. Lehner's authorized agent and representative, knew that the SolarCode Documents contained material misrepresentations, including misrepresentations regarding immediate funding for the SolarCode venture and value of SolarCode.

107. R. Lehner, acting through his authorized agent, Hochbaum, represented to Eclipse orally and through the SolarCode Documents that SolarCode would be receiving $110,000,000 in funding and that SolarCode would make billions of dollars through its energy venture.

108. R. Lehner and Hochbaum knew that there was no certainty that SolarCode would actually be receiving the $110,000,000 in funding, that SolarCode did not have an over ten billion dollar value in October 2021 or January 2022, and that there was very high risk that the SolarCode project would never come to fruition and SolarCode would never make any money.

109. R. Lehner, acting through his authorized agent and representative, Hochbaum, intentionally concealed the risky nature of the SolarCode project and the ability to obtain necessary funding from Eclipse.

110. R. Lehner, acting through his authorized agent and representative, Hochbaum, intended to induce Eclipse to rely on the materially misleading SolarCode Documents and representations regarding SolarCode's ability to obtain funding and make billions of dollars in revenue.

111. Eclipse was justified in its reliance on Hochbaum and the SolarCode Documents' representations.

112. In the absence of R. Lehner's false pretenses, false representations, and actual fraud, Eclipse would not have provided the Loans.

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

113. Eclipse's reliance on R. Lehner's false representations was justified and reasonable.

114. Eclipse has sustained damages as a result of R. Lehner's false pretenses, fraud, and misrepresentations in an amount to be proven at trial.

115. Eclipse is entitled to a judgment against Defendants stating that all amounts owed to Eclipse by Defendants be excepted from discharge under Section 523(a)(2)(A).

116. As a result of Defendants' foregoing actions, Eclipse has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest.

**REQUEST FOR RELIEF**

Wherefore, Plaintiff Eclipse prays for judgment against Defendants as follows:

1. For judgment against Defendants in an amount to be determined at trial;

2. For judgement determining that such money judgment is excepted from discharge pursuant to Sections 523(a)(2)(A) and (B);

3. For an award of attorney's fees and costs; and

4. For such other and further relief as the Court deems just and proper.

Dated this 22nd day of May, 2023.

GARMAN TURNER GORDON LLP

By /s/ Talitha Gray Kozlowski
TALITHA GRAY KOZLOWSKI, ESQ.
TERESA M. PILATOWICZ, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119

*Attorneys for Creditors Eclipse Service Inc.*
