E-filed: June 2, 2023

Robert R. Kinas (NV Bar No. 6019)
Alexis R. Wendl (NV Bar No. 15351)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile:  (702) 784-5252
Email: rkinas@swlaw.com
       awendl@swlaw.com
*Attorneys for Peter Eriksson*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 22-14616-nmc |
| ROBIN LINUS LEHNER and DONYA TINA LEHNER, | Chapter 7 |
| | Adv. No. |
| Debtors. | **COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(A)(2) AND 523(A)(6)** |
| PETER ERIKSSON, | |
| Plaintiff, | |
| v. | |
| ROBIN LINUS LEHNER and DONYA TINA LEHNER, | |
| Defendants. | |

Plaintiff Peter Eriksson ("Eriksson"), by and through his undersigned counsel hereby allege for his Complaint to Determine Non-Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6) ("Complaint") against Defendants Robin Linus Lehner ("R. Lehner") and Donya Tina Lehner ("D. Lehner," and together with R. Lehner, "Defendants"), as follows:

### I. JURISDICTION AND VENUE

1. This is an adversary proceeding pursuant to 11 U.S.C. § 523 to determine the non-dischargeability of an extension of credit for a debt owed to Eriksson by R. Lehner individually and by R. Lehner and D. Lehner as to their community property.

2.   This adversary proceeding is commenced pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

3.   This Court has jurisdiction over this adversary proceeding as a core proceeding under 28 U.S.C. §§ 157(b)(2)(I)-(J) and 1334(a)-(b).

4.   On December 30, 2022, Defendants filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Nevada, initiating Case No. BK-22-14616-nmc ("Bankruptcy Case").  ECF No. 1.

5.   This judicial district is the proper venue for this adversary proceeding under 28 U.S.C. § 1409(a), as this adversary proceeding arises under, and is in connection with, the Bankruptcy Case, which is currently pending before this Court in this judicial district.

## II.   THE PARTIES

6.   Eriksson is a creditor and party-in-interest in the Bankruptcy Case.

7.   Eriksson is, and at all relevant times has been, a resident of Sweden.

8.   Defendants are co-debtors in the Bankruptcy Case.

9.   R. Lehner is, and at all relevant times has been, residing in the state of Nevada.

10.  D. Lehner is, and at all relevant times has been, residing in the state of Nevada.

11.  Defendants list Eriksson as a nonpriority unsecured creditor who is owed an unknown amount on their Schedule E/F filed in the Bankruptcy Case.  *See* ECF No. 44.

## III.   ERIKSSON'S CLAIM AGAINST R. LEHNER AND THE MARITAL COMMUNITY

12.  "Nevada is a community property state," which means there is a presumption "that all property not acquired by gift, bequest, or devise belongs to the 'community' created when two people marry."  *In re Field*, 440 B.R. 191, 194 (Bankr. D. Nev. 2009); *see also* NRS 123.220 (defining "community property").

13.  Property owned by a spouse before marriage or that he or she acquired "afterwards by gift, bequest, devise, descent or by an award for personal injury damages, with the rents, issues and profits thereof, is his or her separate property."  NRS 123.130.

14. Under Nevada law, "either spouse, acting alone, may manage and control community property … with the same power of disposition as the acting spouse has over his separate property." NRS 123.230.

15. The obligations to a creditor that are non-dischargeable as to one spouse are nondischargeable against the post-petition community property. *See, e.g.*, *Bartenwerfer v. Buckley*, 143 S.Ct. 665, 672-73 (2023) ("Understanding § 523(a)(2)(A) to reflect the passive voice's usual 'agnosticism' is thus consistent with the age-old rule that individual debtors can be liable for fraudulent schemes they did not devise."); *In re Davies*, 494 B.R. 453, 465 (Bankr. C.D. Cal. 2013); *In re LeSuer*, 53 B.R. 414, 416 (Bankr. D. Ariz. 1985) (concluding that "the Code's clear policy is that the economic sins of either spouse shall be visited upon the community when a discharge is denied" and that "[a] marital community whose actions do not conform to the standards imposed by law should not earn the same discharge received by joint debtors who did not engage in proscribed conduct.").

16. Defendants have been married since July 26, 2014.

17. Defendants were married when R. Lehner personally guaranteed the debt owed to Eriksson on May 5, 2016.

18. Defendants were married and residing in Nevada when R. Lehner requested and negotiated the extension of credit for that debt and when he signed the settlement agreement for the extension of credit on or around May 20, 2021.

19. R. Lehner made representations to Eriksson that he intended to use community property – his earnings from his National Hockey League ("NHL") contract – to repay the debt. *See* Partial Tr. of Feb. 24, 2023 Section 341 Meeting at 26:5-9, attached as **Exhibit 1**.

20. At all relevant times, R. Lehner managed and controlled the community property with the same power of disposition as he would have had over his separate property.

21. The extension of credit described herein is therefore a separate claim against R. Lehner and a community claim for which both R. Lehner and D. Lehner can be liable as to their community property.

22. Accordingly, Eriksson's claim in the Bankruptcy Case should be excepted from discharge against R. Lehner as to his separate property and against R. Lehner and D. Lehner as to their community property.

## IV. BACKGROUND OF THE CASE

### A. The 2016 Loan and Loan Agreement

23. In early 2016, Eriksson, Individia Stockholm AB ("ISAB"), Individua Group AB ("IGAB"), and R. Lehner discussed and negotiated the terms of a proposed loan from Eriksson to finance a start-up related to Hem för Vård och Boende (homes for care and living) homes in Dragudden, Sweden.

24. On or around May 5, 2016, Eriksson, as lender; ISAB, as borrower; and IGAB and R. Lehner as guarantors, executed the Loan Agreement. *See* Loan Agreement, attached as **Exhibit 2**.[1]

25. Eriksson agreed to loan $2,500,000 SEK to ISAB pursuant to the terms of the Loan Agreement ("Loan"). *See id.* at § 3.1.

26. ISAB agreed to repay the Loan by May 13, 2017, including all interest accrued and any fees, charges, and expenses as described in the Loan Agreement. *See id.* at § 5.1.

27. IGAB and R. Lehner guaranteed ISAB's performance under the Loan Agreement and agreed to be jointly and severally liable "for all of [ISAB's] obligations to [Eriksson] under the Loan Documents." *See id.* at §§ 3.3, 11.1.

28. R. Lehner, as guarantor, agreed to be bound by the terms of the Loan Agreement, including the guarantees, covenants, and warranties set forth therein. *See generally id.* at §§ 11-14.

29. Relevant here, R. Lehner had an ongoing duty to inform Eriksson of any material adverse changes from the date of the Loan Agreement until the Loan is fully repaid.

30. Section 13.3 requires R. Lehner to "promptly notify" Eriksson if he "become[s] aware of any legal or arbitration proceedings commenced against [R. Lehner] that may be deemed

---

[1] Exhibit 2 includes a true and correct copy of the Loan Agreement as written in Swedish and a translated version of the same as stated in the Declaration of Jonas Edward, attached as **Exhibit 4**. All quotes and references to the Loan Agreement are to the translated version.

- 4 -

to have a Material Adverse Effect and, upon request, provide [Eriksson] such information that may be requested unless disclosure of such information would be against the law." *Id.* at § 13.3.

31. A "material adverse effect" includes "any significant adverse change regarding" R. Lehner's ability "to fulfill [his] obligations according to the Loan Documents." *Id.* at 1.1.

32. On or around May 10, 2016, Eriksson performed by transferring the Loan amount to ISAB. *See* Ex. 2 at App'x 2.

33. ISAB was required to repay the Loan pursuant to the terms of the Loan Agreement by May 13, 2017. *See* Ex. 2 at § 1.1.

34. ISAB did not make any payments by May 13, 2017.

35. Thus, ISAB defaulted on the Loan with an outstanding principal balance of $2,500,000 SEK.

36. After defaulting, ISAB tendered $500,000 SEK on July 28, 2017, and $70,636 SEK on April 12, 2018.

37. With the Loan amount still outstanding following ISAB's default, Eriksson filed a lawsuit against R. Lehner in the district court of Stockholm, Case No. T 510-20, and obtained a default judgment on July 24, 2020 ("Default Judgment").

38. The Default Judgment ordered R. Lehner to pay $2,073,643 SEK plus interest pursuant to the Loan Agreement ("Loan Balance").

39. R. Lehner did not make any payments to Eriksson pursuant to the Default Judgment.

**B.    The 2021 Extension of Credit and Settlement Agreement**

40. On March 19, 2021, counsel for R. Lehner emailed counsel for Eriksson, "I just got word that Robin wants to try finding a payment plan to repay the debt – can we get in contact next week to discuss an arrangement?"

41. Over the next two months, R. Lehner and Eriksson negotiated the terms of the payment plan and settlement agreement.

42. At this time, R. Lehner had a 5-year NHL contract with the Vegas Golden Knights for $25 million.

43. R. Lehner told Eriksson that he intended to make payments with his NHL earnings.

44. On May 20, 2021, Eriksson and R. Lehner executed a Settlement Agreement. *See* Settlement Agreement, attached as **Exhibit 3**.[2]

45. R. Lehner agreed to pay Eriksson a total of $591,132 USD ("Settlement Amount") in satisfaction of the Loan Balance. *Id.* at § 1.

46. The Settlement Amount was to be paid in 12 monthly installments of $49,261 USD, with the first installment due no later than October 31, 2021. *Id.* at § 2.

47. If R. Lehner were to default under the terms of the Settlement Agreement,

> the entire Settlement Amount becomes due for immediate payment with a monthly interest on overdue payment of three percent. If this happens, the parties agree that The Default Judgement shall be enforceable without limitations and that payments in accordance with The Default Judgement shall be made in settlement of The Settlement Amount. In addition, in such a case Peter Eriksson shall have the right to make further claims against Robin Lehner due to Peter Eriksson's costs for collecting The Settlement Amount according to the conditions set out in para 9.1 of The Loan Agreement.

*Id.* at § 3.

C. **R. Lehner Immediately Defaulted Under the Settlement Agreement**

48. R. Lehner failed to tender the first installment payment by October 31, 2021.

49. On November 1, Eriksson notified R. Lehner of his default and demanded immediate payment of the full amount due and owing pursuant to Section 3 of the Settlement Agreement.

50. On November 2, counsel for R. Lehner explained that he intended to pay the first installment but had inadvertently missed the due date and indicated that he intended to pay the full amount, including interest, by November 25.

51. Relying on the representations R. Lehner made through his counsel, Eriksson abstained from taking further action in response to R. Lehner's default.

52. R. Lehner failed to tender any payment by November 25.

---

[2] Exhibit 3 includes a true and correct copy of the Settlement Agreement as written in Swedish and a translated version of the same as stated in the Declaration of Jonas Edward, attached as **Exhibit 4**. All quotes and references to the Settlement Agreement are to the translated version.

- 6 -

53. On November 26, Eriksson notified R. Lehner that he had failed to tender payment by November 25.

54. Counsel for R. Lehner represented that the payment would be made within the next month.

55. On December 3, Eriksson, relying on the representations R. Lehner made through counsel, told R. Lehner that he could have until December 31 to pay the full amount owed if he paid $35,468 USD, the late interest due and owing through December 31, by December 7.

56. Counsel for R. Lehner indicated that he would pay $35,468 USD.

57. On December 7, R. Lehner did not pay the late interest amount.

58. Instead, R. Lehner asked Eriksson for another week to obtain the full amount owed.

59. On December 8, Eriksson informed R. Lehner that he would be exercising his legal rights under Section 3 of the Settlement Agreement.

60. In response, counsel for R. Lehner represented that Eriksson would receive $35,468 USD by the next day and that the remaining amount would be paid by the following week.

61. On December 9, 2021, R. Lehner made a payment of $35,000 USD to Eriksson and promised to pay the remaining amount owed by December 30.

62. Relying on R. Lehner's representations, Eriksson abstained from taking further action in response to R. Lehner's default.

63. R. Lehner failed to tender payment by December 30.

64. On or around December 31, Andreas Holmqvist, one of R. Lehner's duly authorized representatives, asked Eriksson for another month to obtain the payment.

65. Relying on the representations R. Lehner made through his representative, Eriksson agreed, provided that R. Lehner paid $16,000 USD, the late interest due and owing through January 31, by January 5, 2022.

66. R. Lehner agreed to pay $16,000 USD by January 5.

67. R. Lehner failed to tender payment by January 5.

68. On January 16, R. Lehner made a payment of $16,000 USD to Eriksson.

69. On January 31, counsel for R. Lehner confirmed that he would not be able to tender payment.

70. R. Lehner, through counsel, promised to pay the full amount due and owing by February 28.

71. Eriksson, relying on the representations R. Lehner made through counsel, abstained from taking further action in response to R. Lehner's default.

72. R. Lehner failed to tender payment by February 28.

73. On March 10, Eriksson notified R. Lehner that he would be filing a bankruptcy application in Sweden on March 16.

74. On March 16, counsel for R. Lehner represented that he had applied for a loan to pay the full amount due and owing but did not think he would be able to receive the funds if Eriksson filed the bankruptcy application.

75. Relying on the representations R. Lehner made through counsel, Eriksson agreed to abstain from filing the bankruptcy application until March 31, provided that R. Lehner paid $38,000 USD, the late interest due and owing through March 31, by March 17.

76. R. Lehner agreed to pay $38,000 USD by March 18.

77. R. Lehner failed to tender payment by March 18.

78. Instead, R. Lehner continued to ask Eriksson for more time to obtain the funds.

79. On March 25, counsel for R. Lehner disclosed that he had a business loan of $9,000,000 that was secured by his NHL contract earnings.

80. His counsel also represented that one of his businesses, SolarCode, had certain financing opportunities pending that would allow him to pay off the $9,000,000 business loan and the full amount owed to Eriksson.

81. Notwithstanding the foregoing representations, R. Lehner failed to pay the full amount owed to Eriksson.

82. The only payments R. Lehner tendered to Eriksson were the two interest payments totaling $51,000.[3]

---

[3] Eriksson was forced to file a bankruptcy application in Sweden on June 17, 2022.

- 8 -

83. Eriksson therefore has a $787,921 USD claim against Defendants, as set forth in Claim 30 filed in the Bankruptcy Case.

**D.    R. Lehner's Misrepresentations and Omissions to Eriksson**

84. R. Lehner intended to induce Eriksson to agree to an extension of credit for the Loan Balance pursuant to the Default Judgment by making material omissions and representations about the pending legal proceedings against him, his debts and liabilities to other undisclosed creditors, and his intent to repay the Settlement Amount.

*R. Lehner Failed to Disclose Legal Proceedings*

85. As set forth above, R. Lehner had a duty to disclose all legal and arbitration proceedings filed against him as they could have resulted in a significant adverse change in his ability to fulfil his obligations under the Loan Agreement.

86. R. Lehner did not notify Eriksson of any legal or arbitration proceedings that had been filed against him since May 5, 2016, as required by Section 13.3 of the Loan Agreement.

87. Eriksson has since discovered that R. Lehner was a defendant in the following matters, among possible others, that were filed between May 5, 2016, and May 20, 2021:

    a. *Carey Hedstrom et al. v. Michael Lehner et al.,* No. CV2021-005251, Maricopa County Superior Court;

    b. *Mats Nilsson et al. vs. Ecoboost USA, LLC et al*, No. CV2020-055511, Maricopa County Superior Court;

    c. *Renick LLC v. Robin Lehner et al.*, No. 18AA-AC00251, Montgomery County District Court;

    d. *Renick Reptiles, Inc. v. Robin Lehner*, No. 18SL-CC02523, St. Louis County District Court.

88. R. Lehner has acknowledged that he is a defendant in the proceedings described in Paragraph 70(a)-(b) by way of his Statement of Financial Affairs filed in the Bankruptcy Case. *See* ECF No. 44.

///

89. R. Lehner has also acknowledged under oath and on his Statement of Financial Affairs filed in the Bankruptcy Case that he was a defendant in the proceeding described in Paragraph 70(c)-(d). *See* Ex. 1 at 90:9-24; ECF No. 44 at 25.

90. R. Lehner knew or had reason to know of these proceedings against him prior to the extension of credit on May 20, 2021, because, among other things, he had been served with the complaints and other documents related to these proceedings and had retained counsel to defend him against the claims in each case.

91. On or around April 21, 2021, R. Lehner was served with a summons and complaint in *Carey Hedstrom et al.*, wherein the plaintiffs sought more than $12,500,000 in compensatory damages alone.

92. R. Lehner signed the Settlement Agreement three days later without ever mentioning the litigation to Eriksson.

93. To induce Eriksson to agree to an extension of credit and the Settlement Agreement, R. Lehner intentionally and willfully withheld all information related to any proceedings that had been filed against him since May 5, 2016.

94. Eriksson reasonably and justifiably relied on R. Lehner's representations (and omissions) when negotiating and agreeing to the extension of credit.

95. Had R. Lehner disclosed the pending litigation to Eriksson, Eriksson would not have agreed to an extension of credit pursuant to the Settlement Agreement.

### R. Lehner Failed to Disclose Debts and Liabilities

96. Unbeknownst to Eriksson when he agreed to an extension of credit, Defendants were indebted to several other undisclosed creditors. Those debts and liabilities totaled over $6,500,000 as follows:

    a. Business debt related to a promissory note between Anne Mead and SolarCode for $448,000;

    b. Guaranteed financing and a promissory note for a business debt between Bredan, LLC and SolarCode for of $895,000;

      c.      Business debt for legal services for RL Exotics, LLC in the amount of $139,115.28;

      d.      Debt related to a promissory note with David Schlee for $200,000;

      e.      Guaranteed credit facility for Milos Andric from Deutsche Bank Luxembourg S.A. for $2,800,000;

      f.      Debt related to a promissory note with Dr. Mehmet Erk for $200,000;

      g.      Debt related to a promissory note with Dr. Michael Vasquez for $100,000;

      h.      Debt related to a promissory note and purchase sale agreement with JHB Collective, LLC for $887,500;

      i.      Debt related to a promissory note with Richard Hamister for $50,000;

      j.      Debt related to a promissory note with Taurus LLC for $300,000 that granted a security interest in R. Lehner's NHL contract proceeds; and

      k.      Debt related to a promissory note with Taurus LLC for $495,000 that granted a security interest in R. Lehner's NHL contract proceeds.

97. R. Lehner incurred all of the foregoing obligations prior to the extension of credit he received from Eriksson on May 20, 2021.

98. R. Lehner's signature on the documents related to the foregoing debts and liabilities show he was aware of them when he and Eriksson executed the Settlement Agreement.

99. R. Lehner incurred the $495,000 debt owed to Taurus LLC on April 26, 2021, the same day he signed the Settlement Agreement and returned it to Eriksson for his signature.

100. R. Lehner incurred the $30,000 debt owed to Taurus LLC on May 8, 2021, while waiting for Eriksson to sign the Settlement Agreement.

101. R. Lehner confirmed under oath that he had told Eriksson he intended to repay the Settlement Amount with his NHL contract earnings. *Id.* at 26:5-9.

102. However, R. Lehner failed to disclose to Eriksson that he had secured nearly $800,000 in debts to Taurus LLC with his NHL contract earnings in the weeks before Eriksson signed the Settlement Agreement.

103. R. Lehner confirmed under oath that he failed to disclose the foregoing debts and liabilities totaling over $6,500,000 to Eriksson when he requested an extension of credit and entered into the Settlement Agreement:

> Q: "Did you disclose to Mr. Eriksson at the time that you had guaranteed lots of other loans?"
>
> A: "I don't believe so, no."

Ex. 1 at 26:10-13.

104. Eriksson reasonably relied on R. Lehner's representations (and omissions) about his debts, liabilities and ability to repay the Settlement Amount when agreeing to enter into the Settlement Agreement.

105. R. Lehner's ability to repay the Settlement Amount was material to Eriksson's willingness to agree to an extension of credit.

106. Eriksson would not have agreed to an extension of credit or the Settlement Agreement had R. Lehner disclosed the foregoing outstanding debts and liabilities.

### *R. Lehner's False Pretenses and Ongoing Omissions*

107. R. Lehner represented, on multiple occasions, that he intended to repay Eriksson.

108. Eriksson reasonably relied on R. Lehner's representations when he agreed to an extension of credit.

109. Unbeknownst to Eriksson, R. Lehner's representations were materially false. R. Lehner did not, in fact, intend to repay Eriksson the Loan Balance.

110. To the contrary, R. Lehner believed the Loan Balance had been paid in full:

> Q: "Why did you not pay Mr. Eriksson monthly payments?"
>
> A: "As you see, it's, I, I fulfilled a contract and I, it was a long process with Mr. Eriksson and unfortunately the Swedish justice system, I couldn't, he was already paid and there's papers and evidence to all that. Mr. Eriksson was paid in full…."

*See* Ex. 1 at 28:17-24.

111. R. Lehner did not communicate his belief that the Loan Balance had been paid in full to Eriksson.

- 12 -

112. Eriksson would not have agreed to an extension of credit or the terms of the Settlement Agreement had he known that R. Lehner (a) did not intend to ever repay the Settlement Amount and/or (b) believed the Loan Balance had already been repaid.

113. R. Lehner, while in default under the Settlement Agreement, paid Milos Andric $900,000 on April 26, 2022, and another $900,000 on May 18, 2022; R. Lehner also paid Mazen Ali Awadh Jaber $1,500,000 on May 19, 2022. *See* Ex. 1 at 26:18-27:21; ECF No. 44 at 68-69.

114. Thus, based on his testimony under oath, R. Lehner was capable of making payments to Eriksson.

115. R. Lehner chose not to make any payments. He opted, instead, to broker for repeated extensions.

116. R. Lehner confirmed under oath that he failed to make any payments under the Settlement Agreement:

> Q: "Did you make any of the payments [pursuant to the Settlement Agreement]?"
>
> A: "I don't believe so, no."

*See* Ex. 1 at 26:2-4.

### V. CAUSES OF ACTION

### COUNT ONE

**(Exception to Discharge for Imputations of False Pretenses, False Representations and Actual Fraud - 11 U.S.C. § 523(a)(2)(A))**

117. Eriksson incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

118. Under Section 523(a)(2)(A), an individual debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

119. The Settlement Agreement is an extension, renewal, and/or refinancing of credit for the Loan Balance.

120. R. Lehner obtained the extension of credit by false and misleading pretenses, representations, omissions, and actual fraud.

121. Until the Loan was repaid, R. Lehner had a duty to promptly notify Eriksson of all litigation against R. Lehner that could have an adverse effect on his ability to repay the Loan pursuant to Section 13.3 of the Loan Agreement.

122. R. Lehner failed to disclose any litigation that had been filed against him since May 5, 2016, to Eriksson, including the litigation he had been served with just three days before he signed the Settlement Agreement.

123. R. Lehner also failed to disclose any debts or liabilities he had incurred since May 5, 2016, totaling over $6,500,000 that would have had a material effect on his ability to repay the Loan Balance.

124. R. Lehner made false, misleading representations to Eriksson about his ability to repay the Loan Balance with his NHL contract earnings and failed to disclose that he had secured nearly a nearly $800,000 debt with his NHL contract earnings while simultaneously negotiating the Settlement Agreement with Eriksson.

125. R. Lehner made false, misleading representations about his intent to repay the Loan Balance when he contacted Eriksson in March 2021 to propose a repayment plan because he believed that the Loan had been repaid and therefore had no intent to ever repay Eriksson.

126. R. Lehner continued to make false, misleading representations when he defaulted on the first installment payment under the Settlement Agreement and subsequently asked Eriksson for extensions to pay the full Loan Balance and interest but had no intention of paying the amount owed to Eriksson.

127. R. Lehner's false and misleading pretenses, representations, and omissions about his debts, liabilities, and intentions were material to Eriksson's willingness to agree to an extension of credit.

128. R. Lehner's false and misleading pretenses, representations, and omissions about his debts, liabilities, and intentions were intentional and deliberate, and were done to secure an

- 14 -

1  extension of credit, delay the enforcement of the Default Judgment and any related claims, and induce Eriksson into settlement.

129. In the absence of R. Lehner's false pretenses, false representations, fraudulent omissions, and actual fraud, Eriksson would not have agreed to an extension of credit for the Loan Balance or entered into the Settlement Agreement.

130. At the time Eriksson entered into the Settlement Agreement with R. Lehner, he did not know and could not have known that R. Lehner's representations were false or that he had omitted material information about his debts and liabilities.

131. Eriksson's reliance on R. Lehner's false representations were justified and reasonable.

132. Leading to the execution of the Settlement Agreement, Eriksson was unaware that R. Lehner's representations were false when made or that he had failed to disclose the litigation filed against him or his debts and liabilities.

133. The debt for this extension of credit is a community debt because Defendants were married at all relevant times and, upon information and belief, were residents of Nevada when R. Lehner negotiated, executed, and defaulted on the Settlement Agreement.

134. Eriksson has sustained damages as a result of Defendants' false pretenses, fraud, misrepresentations, and omissions in an amount to be proven at trial.

135. Eriksson is entitled to a judgment against Defendants in an amount to be proven at trial, and further judgment that all amounts owed to Eriksson by Defendants be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

**COUNT TWO**

**(Exception to Discharge for Willful and Malicious Injury – 11 U.S.C. § 523(a)(6))**

136. Eriksson incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

137. Under Section 523(a)(6), an individual debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

138. R. Lehner caused willful and malicious injury to Eriksson when he intended to interfere with Eriksson's ability to abstain from taking action to collect on the Loan Balance, intended to make false and misleading representations and omissions regarding his debts and liabilities to induce Eriksson into agreeing to the Settlement Agreement, and asked Eriksson for multiple extensions to tender payment under the Settlement Agreement while simultaneously paying debts and liabilities owed to other undisclosed creditors.

139. R. Lehner knew that his misrepresentations and omissions would harm Eriksson's ability to recover the Loan Balance and cause Eriksson's to incur attorneys' fees.

140. R. Lehner did not have just cause or excuse for his willful and malicious misrepresentations and omissions to Eriksson.

141. The debt for this extension of credit is a community debt because Defendants were married at all relevant times and, upon information and belief, were residents of Nevada when R. Lehner negotiated, executed, and defaulted on the Settlement Agreement.

142. Eriksson has sustained damages as a result of R. Lehner's willful and malicious misrepresentations and omissions in an amount to be proven at trial.

143. Eriksson is entitled to a judgment against Defendants in an amount to be proven at trial, and further judgment that all amounts owed to Eriksson by Defendants be excepted from discharge under 11 U.S.C. § 523(a)(6).

## PRAYER FOR RELIEF

**WHEREFORE**, Eriksson requests judgment against Defendants as follows:

A. For judgment against Defendant R. Lehner, individually and as to the community property, for an amount to be determined at trial, plus accrued and accruing interest;

B. For judgment against Defendant D. Lehner as to the community property, for an amount to be determined at trial, plus accrued and accruing interest;

C. For an order determining and decreeing that all of the claims of Eriksson against Defendants are non-dischargeable as to R. Lehner's separate property and Defendants' community property pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6);

D.     For Eriksson's reasonable attorneys' fees incurred as a result of Defendants' conduct described herein;

E.     For Eriksson's costs of suit incurred; and

F.     For such other and further relief as the Court deems just and proper.

DATED this 2nd day of June 2023

        SNELL & WILMER L.L.P.

        */s/ Robert R. Kinas*
        Robert R. Kinas (NV Bar No. 6019)
        Alexis R. Wendl (NV Bar No. 15351)
        3883 Howard Hughes Parkway, Suite 1100
        Las Vegas, NV 89169
        Telephone: (702) 784-5200
        Facsimile: (702) 784-5252
        *Attorneys for Peter Eriksson*